730 So.2d 1164 (1999)
QUALITY TRUCK AND AUTO SALES, INC., and Joann Pardue
v.
Gail YASSINE.
1971088.
Supreme Court of Alabama.
March 26, 1999.
*1165 Troy Grayson of Riverchase Legal Center, L.L.C., Birmingham, for appellants.
John A. Hamilton, Jr., of Culp & Thomason, Vestavia Hills, for appellee.
SEE, Justice.
Quality Truck and Auto Sales, Inc., and its managing agent, Joann Pardue (collectively, "Quality"), appeal from the Shelby Circuit Court's order denying their motion to compel arbitration of claims brought against them by Gail Yassine. Quality argues that the trial court erred in denying arbitration of Yassine's claims. Quality asserts that the arbitration clause contained in the bill of sale for the vehicle Yassine purchased from Quality was enforceable, notwithstanding the absence of a signature by an officer of Quality, and that the arbitration clause is broad enough to encompass the claims brought by Yassine. Because we hold that the arbitration clause was contained in a binding contract and that Yassine's claims fall within the coverage of the arbitration clause, we reverse and remand.

I.
In March 1997, Yassine negotiated with Quality to purchase a used 1991 Mercury Capri automobile for a price of $7,193. Yassine alleged that during the course of negotiations, Quality made factual misrepresentations and that she relied on those misrepresentations in making the purchase. After the purchase, Yassine began to experience problems with the car. She sued Quality in the Shelby Circuit Court, claiming to have suffered damage as the result of the alleged misrepresentations made by Quality. In November 1997, Quality moved to compel arbitration of Yassine's claims, based on an arbitration agreement that was executed when Yassine purchased the car. The arbitration agreement was contained in the bill of sale. Yassine signed the bill of sale, but Quality did not. Although the bill of sale contained a signature line for Quality, under the terms of the bill of sale Quality was required only to accept the bill of sale before it became effective. Quality also moved to stay proceedings pending arbitration. In February 1998, the trial court denied Quality's motions.[1] Quality appealed.[2]
*1166 The bill of sale, which contained the arbitration agreement, included the following provisions:
"F. The undersigned purchaser and Dealer further agree as follows:
"1. That the motor vehicle described in this sale document has been heretofore traveling in interstate commerce, and has an impact upon interstate commerce.
"2. That in the event of any dispute(s), under the terms of this contract of sale arise, (including but not limited to, the terms of the agreement, the condition of the motor vehicle sold, the conformity of the motor vehicle sold, to the contract, the representations, promises, undertakings or covenants made by Dealer in connection with the sale of the motor vehicle, or otherwise dealing with the motor vehicle; any terms of financing in connection therewith, or any terms of any credit life and/or disability insurance purchased simultaneously herewith, or extended service or maintenance agreement), that Dealer and the purchaser agree to submit such dispute(s) to binding arbitration, pursuant to the provisions of 9 USC para. 1, et seq. and according to the commercial rules of the American Arbitration Association then existing, in Birmingham, Al.
"3.(a) That in the event any dispute arises between the parties, as to conformity or conditions of the motor vehicle, the parties will permit a third-party (to be mutually agreed upon), to inspect the motor vehicle to determine its conformity and condition, and that the findings of such third-party shall be binding upon Dealer and the purchaser, in connection with any litigation, arbitration or request for adjustment, pursuant to the provisions of para. 7-2-515(b) of the Code of Alabama.
"(b) In the event Dealer and purchaser cannot mutually agree upon a third party to conduct such inspection, either party shall have the right to petition any Court of competent jurisdiction, or panel of arbitrators, to appoint an expert to act as such third-party.
"(c) The costs of such third-party inspection shall be borne equally by the Dealer and the purchaser, or as may be directed by any Court or panel of arbitrators."
(Emphasis added.)
Count 1 of Yassine's complaint alleges that Quality intentionally or recklessly made false representations of fact concerning the vehicle and that she relied on those false representations in making her purchase. Count 2 alleges that during the sale Quality fraudulently concealed defects in the vehicle. Finally, Count 3 alleges that Pardue, Quality's agent, violated the Federal Truth-in-Lending Act by failing to include the "title and documents fee" charge in the "Finance Charge and Annual Percentage Rate" that was disclosed to Yassine. Yassine seeks compensatory and punitive damages in the amount of $350,000 plus costs, based on (1) the purchase of a vehicle that she asserts was not as valuable as represented by Quality, (2) the payment of charges that she alleges were not for the purpose represented by Quality, and (3) mental anguish she claims to have suffered as a result of the transaction with Quality.

II.
Quality maintains that the trial court erred in denying its motion to compel arbitration because, it argues, (1) the underlying transaction involved interstate commerce, (2) the claims brought by Yassine clearly fall within the scope of the arbitration clause, and (3) the arbitration clause contained in the bill of sale for the vehicle was enforceable despite the absence of a signature of an officer of Quality.[3]
*1167 Yassine argues that the arbitration agreement is not valid and enforceable because, she says, Quality fraudulently induced her to sign the sales contract containing that arbitration agreement. Yassine further contends that even if this Court does reverse the trial court's decision not to compel arbitration, discovery should not be stayed with respect to nonarbitrable issues.[4]

A.
Agreements to arbitrate disputes affecting interstate commerce are governed by the Federal Arbitration Act, as that Act is interpreted by the federal courts. U.S. Const. art I, § 8, cl. 3 (Commerce Clause); Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); art. VI, cl. 2 (Supremacy Clause). This Court has stated:
"Section 2 of the Federal Arbitration Act (`FAA') provides:
"`A written provision in any ... contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable....'
"9 U.S.C. § 2 (emphasis added). Consistent with the FAA, trial courts are required to stay or dismiss proceedings and compel arbitration when the parties have entered into a valid contract containing an arbitration agreement. Moreover, the Supreme Court of the United States has stated that the FAA establishes a strong federal policy favoring arbitration:
"`The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'
"Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). These principles provide the framework within which we must determine whether the trial court erred in [its decision whether to compel arbitration]."
Ex parte McNaughton, 728 So.2d 592, 594 (Ala.1998) (footnotes omitted).
This Court is required to compel arbitration if, under "ordinary state-law principles that govern the formation of contracts," the contract containing the arbitration clause is enforceable. Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615, 617 (Ala. 1997). The United States Supreme Court has stated:
"[T]he text of § 2 [of the Federal Arbitration Act] declares that state law may be applied `if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.' [Perry v. Thomas, 482 U.S. 483, 492, n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).]... Thus, generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."
*1168 Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686-87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). This Court "may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions.... By enacting § 2 [of the Federal Arbitration Act] ..., Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed `upon the same footing as other contracts.'" Id. at 687, 116 S.Ct. 1652 (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)) (citations omitted); Crown Pontiac, 695 So.2d at 617 (turning to "general Alabama contract law to determine whether the parties created an enforceable agreement to arbitrate"). Thus, this Court must review, under general Alabama contract law, Quality's assertion that the trial court erred in refusing to compel arbitration, and this Court must recognize the strong federal policy favoring arbitration.

B.
Yassine attacks the validity of the contract in general by asserting that Quality fraudulently induced her to sign it.[5] She argues that the trial court properly denied Quality's motion to compel arbitration because, she says, her claims are based on misrepresentations made before she signed the sales contract. This Court has stated that "[a]s long as an arbitration clause is broad enough to encompass claims of fraud in the inducement of the contract in which it is found, any claims as to fraud in the inducement of the contract generally, as opposed to the arbitration agreement specifically, are subject to arbitration." Ex parte Lorance, 669 So.2d 890, 892 (Ala.1995) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). Yassine's complaint alleges that she was fraudulently induced to enter into the contract by misrepresentations made by Quality concerning the condition of the vehicle and the terms of financing. The arbitration provision specifically states that Yassine agreed to arbitrate disputes concerning "the representations, promises, undertakings or covenants made by [Quality] in connection with the sale of the motor vehicle, or otherwise dealing with the motor vehicle; any terms of financing in connection therewith, or any terms of any credit life and/or disability insurance purchased...." Accordingly, the agreement binds Yassine to arbitrate these issues. Id.

C.
Quality argues that the trial court could not properly have based the denial of Quality's motion to arbitrate on the fact that no representative of Quality signed the bill of sale (containing the arbitration provision) to evidence Quality's assent to the contract. Quality argues that the arbitration clause contained in the bill of sale was enforceable despite the absence of a signature by Quality. We agree.
Generally, "any conduct of one party, from which the other may reasonably draw the inference of a promise, is effective in law as such." 1 Samuel Williston & Walter H.E. Jaeger, A Treatise on the Law of Contracts § 22A (3d ed.1957); 2 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 6:42 (4th ed.1991). Courts generally accept the "objective theory" of contracts, which determines the existence of a contract based on "the external or objective appearance of the parties' intentions as manifested by their actions." E. Allan Farnsworth, Contracts § 3.6, at 113-14 (1982). "[A] contract for [the] sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties that *1169 recognizes the existence of such a contract." 67 Am.Jur.2d Sales § 129 (1985) (discussing contracts under the Uniform Commercial Code).[6] In keeping with the general rule, this Court has held: "The existence vel non of a contract is determined by reference to the reasonable meaning of the parties' external and objective manifestations of mutual assent. Conduct of one party from which the other may reasonably draw the inference of assent to an agreement is effective as acceptance." Deeco, Inc. v. 3-M Co., 435 So.2d 1260, 1262 (Ala.1983).
This Court has stated that "[t]he object of a signature is to show mutuality and assent, which may be shown in other ways, and unless a contract is required by statute to be in writing, it need not be signed,[[7]] provided it is accepted and acted upon." Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 304 (Ala.1986) (citing Paterson & Edey Lumber Co. v. Carolina-Portland Cement Co., 215 Ala. 621, 112 So. 245 (1927)); 17A Am.Jur.2d Contracts § 186 (1991) ("Although apart from statute a signature is not necessary to the formation of a contract, it may serve as a manifestation of an intent to make a contract."). A contract for the sale of a vehicle to Yassine for a purchase price of over $7,000 is required to be in writing. Alabama's codification of the Statute of Frauds, Ala.Code 1975, § 7-2-201(1), provides:
"Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker."
(Emphasis added.) See James J. White and Robert S. Summers, Uniform Commercial Code § 2-4 at 59 (4th ed.1995) (noting that the writing need only be "signed by the party to be charged [with the contract]"). Thus, although a writing was required for the contract for the sale of the vehicle, the absence of the signature of the party attempting to enforce the contract does not render the contract unenforceable, "provided [the contract] is accepted and acted upon." Lawler Mobile Homes, 492 So.2d at 304; cf. Ex parte Rush, 730 So.2d 1175, 1177-78 (Ala. 1999) (upholding the trial court's order compelling arbitration despite the absence of a signature of the party charged with the arbitration agreement, based on other evidence of mutual assent to the contract).
Although Quality did not sign the bill of sale, its actions evidence an objective manifestation of assent to the contract. Quality gave up possession of the vehicle to Yassine and received in return the obligations contained in the retail installment contract and the bill of sale. The retail installment contract contained the financing agreement between Quality and Yassine, while the bill of sale was the actual purchase contract that created Yassine's obligation to pay the purchase price. Quality assented to the contract by giving up possession of one of its vehicles in return for an agreement by Yassine to pay. Accordingly, Quality "accepted and acted upon" the contract containing the arbitration provision, and the absence of Quality's signature does not render that contract, or *1170 the arbitration provision contained in it, unenforceable. Id.[8]

III.
Yassine argues that any stay of discovery should be limited to discovery relating to those issues that are arbitrable. Yassine concedes, however, that with respect to arbitrable issues, "[w]here an action has been stayed pending arbitration, a [trial] court may not permit the parties to conduct discovery under the ... Rules of Civil Procedure." Corpman v. Prudential-Bache Sec., Inc., 907 F.2d 29, 31 (3d Cir.1990) (citing Suarez-Valdez v. Shearson Lehman/American Express, Inc., 858 F.2d 648, 649 (11th Cir. 1988)). Thus, because we hold that all of Yassine's claims against Quality fall within the compass of the arbitration clause, the trial court must stay discovery with respect to those claims. Id.
Yassine argues in her brief that she has asserted nonarbitrable claims against a party other than Quality.[9] This Court has stated that "federal law does not require a stay of nonarbitrable claims, but leaves the question whether to grant such a stay to the trial court, state or federal, `as a matter of its discretion to control its docket.'" Terminix Int'l Co. v. Jackson, 669 So.2d 893, 899 (Ala. 1995) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 20 n. 23, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). These allegedly nonarbitrable claims, however, do not appear in the record before this Court, and, therefore, they are not properly before this Court on appeal. Totten v. Lighting & Supply, Inc., 507 So.2d 502, 503 (Ala.1987) ("[O]n appeal, this Court is limited to a review of the record alone, and an issue not reflected in the record as having been raised in the trial court cannot be raised for the first time on appeal."). Thus, we decline to address this issue, which was raised for the first time on appeal.

IV.
Yassine entered into a legally binding contract with Quality. That contract contained an agreement to arbitrate her claims against Quality. Because the arbitration agreement is enforceable under general principles of Alabama contract law, the trial court erred in denying Quality's motion to compel arbitration and to stay discovery. Accordingly, the order of the trial court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, LYONS, and BROWN, JJ., concur.
JOHNSTONE, J., concurs specially.
KENNEDY, J., concurs in the result.
JOHNSTONE, Justice (concurring specially).
The plaintiff claims also that the arbitration agreement was fraudulently included in the contract documents that she did sign after she had expressly refused to sign a specific, separate arbitration agreement. This claim challenging the arbitration agreement in particular, as distinguished from the entire contract, would be subject to adjudication by the court and not to arbitration. Investment Management & Research, Inc. v. Hamilton, 727 So.2d 71 (Ala.1999).
*1171 The plaintiff's problem in advancing this challenge is that her brief does not recite substantial evidence of record, with citations to the record, supporting the essential elements of the alleged fraud. The specific arbitration agreement the plaintiff claims she refused to sign is included only as an exhibit to her brief and is not included in the record, as her brief acknowledges. Her brief does not quote or cite any affidavit, deposition, or like material in support of this challenge. Thus, it avails her no relief from the arbitration agreement.
Noteworthily, this case does not involve a claim of fraud in the factum, or fraud in the execution, of the whole contract, as distinguished from fraud in the inducement of the whole contract. Justice Livingston's special writing in Drinkard v. Embalmers Supply Co., 244 Ala. 619, 14 So.2d 585 (1943), explains the distinction between fraud in the factum, or fraud in the execution, on the one hand and fraud in the treaty, or fraud in the inducement, on the other hand. This Court has not specifically addressed an arbitration provision included within a contract challenged in its entirety for fraud in the factum, or execution. Anniston Lincoln Mercury Dodge v. Conner, 720 So.2d 898, 901, n. 5 (Ala.1998).
NOTES
[1] The trial judge did not indicate the grounds for the denial. He merely made an entry on the case action summary noting that Quality's motions had been denied.
[2] This Court has stated:

"A petition for the writ of mandamus is the generally accepted method of review when the trial court grants a motion to compel arbitration. Ex parte Alexander, 558 So.2d 364, 365 (Ala.1990). A direct appeal is the generally accepted method of review when a trial court denies a motion to compel arbitration. A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala.1990)."
Ex parte Conference America, Inc., 713 So.2d 953, 955 n. 2 (Ala.1998).
[3] There is no question that the sale of the vehicle to Yassine involved interstate commerce. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Moreover, the claims alleged by Yassine clearly fall within the scope of the arbitration provision. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("Section 2 [of the Federal Arbitration Act] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.... [A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").
[4] This Court on March 19, 1998, without an opinion, denied a petition by Quality for the writ of mandamus compelling arbitration in this case. Ex parte Quality Truck & Auto Sales, Inc., No. 1970907. Yassine contends that the denial of Quality's mandamus petition is res judicata as to the same issues raised in this appeal. However, this Court has noted that because of the extraordinary nature of the writ of mandamus, the denial of a mandamus petition does not have res judicata effect. R.E. Grills, Inc. v. Davison, 641 So.2d 225, 229 (Ala.1994) ("In short, the denial [of a petition for the writ of mandamus] does not operate as a binding decision on the merits."); see Dow-United Techs. Composite v. Webster, 701 So.2d 22, 23 (Ala.Civ.App.1997).
[5] In her brief, Yassine also asserts that the arbitration provision itself was induced by fraud. However, Yassine fails to point this Court to any evidence contained in the record that would support this allegation. The trial court did not indicate the grounds upon which it denied the motion to compel arbitration, and we can find no evidence in the record to support Yassine's assertion. In any event, "this Court is not under a duty to search the record in order to ascertain whether it contains evidence that will sustain a contention made by either party to an appeal." Totten v. Lighting & Supply, Inc., 507 So.2d 502, 503 (Ala.1987). See Rule 10(b), Ala. R.App. P. (requiring the appellee to file with the clerk of the trial court a request for any materials to be included in the record for appeal).
[6] The sale of a motor vehicle is the sale of goods and is covered by Alabama's version of the Uniform Commercial Code. Ala.Code 1975, § 7-2-102 ("this article applies to transactions in goods"). However, Ala.Code 1975, § 7-1-103, preserves supplementary general principles of law and equity ("Unless displaced by the particular provisions of this title, the principles of law and equity ... shall supplement its provisions.").
[7] Certainly, the parties could have expressly agreed that the contract was not effective until it was signed. See 17A Am.Jur.2d Contracts § 185 (1991) ("In the absence of a statute requiring a signature or an agreement that the contract shall not be binding until it is signed, parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract, or the acceptance by one of the performance by the other." (Footnotes omitted.)). However, the bill of sale indicated that it must be "accepted"not that it must be signedbefore becoming effective, and, as discussed in Restatement (Second) of Contracts § 30(2) "FormationMutual Assent" (1981), "[u]nless otherwise indicated by the language or the circumstances, ... acceptance [may be] in any manner and by any medium reasonable in the circumstances."
[8] Moreover, Quality is entitled to enforce the arbitration agreement because both Quality and Yassine did sign the retail installment contract. This Court has stated:

"It is familiar law that in the absence of anything to indicate a contrary intention, writings executed at the same time by the same parties for the same purpose, and in the course of the same transaction, are in the eye of the law one instrument, and will be received and construed together as constituting one contract and evidencing the intention of the parties."
Weeden v. Asbury, 223 Ala. 687, 690, 138 So. 267, 270 (1931). Accord Haddox v. First Alabama Bank of Montgomery, N.A., 449 So.2d 1226, 1229 (Ala.1984) ("[T]wo or more instruments executed contemporaneously by the same parties in reference to the same subject matter constitute one contract and should be read together in construing the contract."). Therefore, reading the retail installment contract in conjunction with the bill of sale, we conclude that the absence of a signature by Quality on the bill of sale does not render the arbitration agreement unenforceable.
[9] Apparently, Yassine amended her complaint to include a conversion claim against Ellis Faulkner and Faulkner Garage and Radiator Service.