ENGLAND, Justice.
On November 15, 1996, Tracey Jones Davis entered into an agreement with Crown Pontiac, Inc., to lease from Crown a new 1996 Nissan 200SX automobile. On October 26, 1998, she sued Crown Pontiac and Nissan Motor Acceptance Corporation (the corporation that had lent her the money to finance the lease transaction), alleging that the lease contract was usurious and asserting several fraud claims. Crown Pontiac and Nissan Motor Acceptance Corporation filed motions to compel arbitration. The trial judge denied the motions. Crown Pontiac appealed. We reverse the order denying Crown Pontiac’s motion and remand.[1]
The trial judge held that because the “Terms and Conditions” document that contained the arbitration agreement was not signed by Crown Pontiac, the agreement was, in effect, a “preclaim release” for which Jones was given no quid pro quo. He concluded that “the sum and substance of the subject ‘Terms and Conditions’ document is executory and this fact coupled with the legal effect of the document being a pre-claim release unsupported by consideration, causes the entire document to be unenforceable.”
The “Terms and Conditions” document contains this arbitration clause:
“Section E. Crown Pontiac-Nissan and Customer/Lessee, mutually covenant and agree, in connection with the resolution of any dispute arising out of the contract(s) entered into by the parties even date herewith, of and concerning the below described motor vehicle, as follows:
“That the vehicle described below was manufactured outside of Alabama; has operated and will continue to operate on interstate highways; has been traveling in interstate commerce; the manufacture, lease, sale and use thereof has been and will continue to be regulated by laws of the United States of America; and, that the contract(s) entered into by the parties this date evidence transactions involving interstate commerce.
“Crown Pontiac-Nissan and Customer/Lessee agree that all disputes resulting from or arising out of the sale/lease transaction entered into, (including but not limited to): the terms of this agreement, its breadth and scope, and any term of any agreement contemporane *1007 ously entered into by the parties concerning the above described goods or services acquired or leased by the customer/lessee; the condition of the motor vehicle; the conformity of the motor vehicle sold or leased to the contract of sale or lease; the representations, promises, undertakings or covenants made by Crown Pontiac-Nissan in connection with the sale or lease of the motor vehicle, or otherwise dealing with the motor vehicle; the terms of financing in connection therewith, or the lease terms in connection herewith; any terms or provisions of any credit life and/or disability insurance purchased simultaneously herewith; or any terms or provisions of any extended service contract purchased simultaneously herewith, that Crown Pontiac-Nissan and the customer/lessee agree to submit such dispute(s) to binding arbitration, pursuant to the provisions of the Federal Arbitration Act, 9 USC 1, et seq. and according to the Commercial Rules of the American Arbitration Association then existing in Jefferson County, Alabama, except that the arbitrator or arbitrators impaneled to arbitrate this matter shall be selected by the parties to this agreement from lists of suitable arbitrators supplied by the American Arbitration Association. The Alabama Rules of Evidence shall apply. The prepaid arbitration filing fees and costs of the arbitration proceeding shall by paid by the party seeking affirmative relief.
“Crown Pontiac-Nissan and the customer/lessee acknowledge that they are agreeing to resolve any dispute between them arising out of or in connection with the lease or purchase of the vehicle described below, by binding arbitration, rather than by litigation in any court.”
Davis placed her initials on the space provided under “Section E.” on the “Terms and Conditions” document. She also signed the last page of the contract. There was no space provided for the initials or signature of a Crown Pontiac representative. Crown Pontiac contends that it is entitled to enforce the arbitration agreement even though no Crown Pontiac representative signed it. The trial Court held that the absence of Crown Pontiac’s signature on the contract made it a “pre-claim release” for which no quid pro quo was given to Davis. We have held that “the absence of the signature of the party attempting to enforce [a] contract does not render the contract unenforceable, ‘provided [the contract] is accepted and acted upon.’ ” Quality Truck & Auto Sales, Inc. v. Yassine, 730 So.2d 1164, 1169 (Ala.1999). Crown Pontiac accepted and acted upon the contract by delivering the vehicle to Davis in return for her payment of the lease amount. Therefore, the absence of Crown Pontiac’s signature does not render the contract unenforceable.
We reverse the trial court’s order denying Crown Pontiac’s motion to compel arbitration.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, BROWN, and JOHNSTONE, JJ., concur.
LYONS, J., concurs in the result.

. Because Nissan Motor Acceptance Corporation did not appeal, we do not address the trial court’s order as it relates to that defendant.