First Family Financial Services, Inc. ("First Family"), appeals from the trial court's order denying its motion to compel arbitration of claims made against it in a lawsuit filed by Riley Jackson. We reverse and remand.
 I.
On August 20, 1997, Jackson obtained a loan from First Family. He purchased credit-life insurance in connection with that loan. On February 1, 1999, Jackson sued First Family. In his complaint, he alleged that First Family had represented to him that the full amount of the credit-life insurance premiums collected was paid to an insurance company, but, he claimed, "in fact those amounts were not paid to `others' but were retained in whole or in part" by First Family. Jackson's complaint alleged fraudulent misrepresentation, fraudulent suppression, and breach of fiduciary duty. In addition to alleging that First Family had misrepresented, or failed to disclose, that it received a commission *Page 1123 
on the sale of credit-life insurance to its customers, Jackson alleged that First Family had suppressed from him the existence of "the arbitration clause" he had signed in connection with his loan and the effects of that "clause."
First Family moved to compel arbitration of Jackson's claims. Among the documents Jackson executed in connection with his loan was a stand-alone arbitration agreement. That agreement reads, in pertinent part:
 "READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING A COURT ACTION.
"ARBITRATION AGREEMENT
 "[At this point, the agreement sets out, in a box, the names of the borrowers, here `MR MS RILEY, MARIE [sic],' and their address; the name of the lender, here First Family, and its address; the date of the loan; and the account number for the transaction.[1]]
 "In consideration of the mutual promises made in this agreement, you [defined as the borrowers] and we [defined as the lender] agree to arbitrate, under the following terms, all claims and disputes between you and us, except as provided otherwise in this agreement:
 "ARBITRATION: Arbitration is a method of resolving disputes between parties without filing a lawsuit in court. By signing this agreement, you and we are both agreeing that if there are any disputes between you and us, you and we must submit them to an arbitrator. The arbitrator's decision is final and binding on you and us. The arbitrator does not have to give any written reasons for the decision. You and we are giving up the right to bring a lawsuit in court, including the right to a jury trial.
 "DISPUTES COVERED: This agreement applies to all claims and disputes between you and us. This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to:
"[*] your loan from us today;
 "[*] any previous loan from us and any previous retail installment sales contract or loan assigned to us;
 "[*] all the documents relating to this or any previous loan or retail installment sales contract;
 "[*] any insurance purchased in connection with this or any previous loan or retail installment sales contract;
"[*] whether the claim or dispute must be arbitrated;
"[*] the validity of this arbitration agreement;
"[*] any negotiations between you and us;
 "[*] any claim or dispute based on an allegation of fraud or misrepresentation;
 "[*] any claim or dispute based on federal or state statute; and
"[*] any claim or dispute based on an alleged tort.
 "This agreement also applies to any claim or dispute, including all the kinds of disputes listed above, between you and any of our employees or agents, any of our affiliate corporations, and any of their employees or agents. . . .
 "You agree that we do not have to initiate arbitration before exercising our remedies of repossession or non-judicial foreclosure, since we can resort to those remedies without going to court. Any *Page 1124 
claim or dispute arising out of, relating to, or in connection with our exercise of those remedies, however, would have to be arbitrated.
 "ARBITRATION RULES: The arbitration will be conducted under the `Commercial Arbitration Rules' of the American Arbitration Association that are in effect at the time arbitration is started and under the rules set forth in this agreement. If there is any conflict between what the Commercial Arbitration Rules say and what this agreement says, what this agreement says will govern. We are giving you a copy of the Commercial Arbitration Rules at the time you sign this agreement. If you lose your copy, we will give you another one if you ask for it.
". . . .
 "COSTS OF ARBITRATION: If you start arbitration, you agree to pay the initial filing fee required by the American Arbitration Association up to a maximum of $125. We agree to pay for the filing fee and any deposit required by the American Arbitration Association in excess of $125. After the American Arbitration Association receives a Demand For Arbitration, it will bill us for that excess. We also agree to pay the costs of the arbitration proceeding up to a maximum of one day (eight hours) of hearings. If we start arbitration, we will pay the filing fee, required deposit, and costs of one day of hearings. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration proceeding that go beyond one day of hearings. The Commercial Arbitration Rules determine who will pay those fees.
 "SELECTION OF ARBITRATOR: The American Arbitration Association maintains lists of approved arbitrators. Arbitrator(s) will be selected from those lists according to the Commercial Arbitration Rules.
 "LOCATION OF ARBITRATION: The arbitration will take place in the county where you live unless you and we both agree to another location.
 "ENFORCEMENT OF ARBITRATION DECISION: After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.
"OTHER IMPORTANT AGREEMENTS:
 "1. This agreement does not affect the applicability of any statute of limitations.
 "2. The loan and insurance transactions between you and us are transactions involving interstate commerce, using funds coming from outside the state. The Federal Arbitration Act applies to and governs this agreement.
 "3. If either you or we should need to file a lawsuit to enforce this agreement, the suit may be brought in any court with jurisdiction.
 "4. You and we agree that this agreement applies to all of your, and all of our, assigns and heirs.
 "5. If any term of this agreement is unenforceable, the remaining terms of this agreement are severable and enforceable to the fullest extent permitted by law.
 "6. This agreement supersedes any prior arbitration agreement that there may be between you and us.
 "7. This agreement to arbitrate applies even if your loan has been paid in full, or charged-off by us, or discharged in bankruptcy. *Page 1125 
 "READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING A COURT ACTION.
 "You and we have entered into this agreement as of the `Date of Loan' written above.
"Borrower RILEY JACKSON Lender FIRST FAMILY FINANCIAL SERVICES, INC.
"/s/ Riley Jackson By: [Signature of representative]
"Borrower MARIE JACKSON
"/s/ Marie Jackson
 "You acknowledge that you have received a completed copy of this agreement together with one copy of the Commercial Arbitration Rules and one Demand For Arbitration form.
"[Riley Jackson's initials] [Marie Jackson's initials]"
Jackson responded to First Family's motion to compel arbitration by arguing that the parties should be allowed to conduct "full and complete discovery" before the court compelled arbitration, that First Family had waived its right to compel arbitration, and that the arbitration clause was unconscionable.
Jackson's argument that First Family had waived its right to compel arbitration is based upon First Family's participation in a class action regarding the credit-life insurance placed on its loans. The class action, styled Batton v. First Family Financial Services, Inc., was litigated in the Calhoun Circuit Court. (The Batton class action was consolidated with a similar class action styled Crook v. AssociatesFinancial Services Co. of Alabama, Inc. References in this opinion to theBatton case refer to the consolidated cases.) Relying on this Court's opinion in McCullar v. Universal Underwriters Life Insurance Co.,687 So.2d 156 (Ala. 1996), the Batton plaintiffs alleged that their creditors could not permissibly calculate credit-life-insurance premiums based upon the gross amount of, or total of payments on, precomputed loans.
In August 1997, the Batton parties agreed to settle that case. Pursuant to that agreement, a copy of which is contained in the record before us in this case, the plaintiff class was composed of persons who had purchased credit-life insurance with a premium based on the total of loan payments, during the period November 15, 1985, through November 15, 1995. The class was certified according to Rule 23(b)(3), Ala.R.Civ.P., under which class members had the right to opt out of the class. Jackson was a member of the Batton plaintiff class. He received a notice concerning the action and the proposed settlement, and he opted out of the class. The settlement order and the final judgment so reflect.
Jackson points out that the original settlement agreement in theBatton class action contained a provision that would have bound the class members to arbitration. Counsel for the plaintiff class in Batton, who also represent Jackson in this case, objected to that provision and it was removed. Batton class members received only the initial settlement notice, Jackson's *Page 1126 
counsel says, and did not receive a notice informing them that the proposed settlement agreement had been amended.
The trial court denied First Family's motion to compel arbitration of Jackson's claims, concluding that it had waived its right to compel arbitration by participating in the Batton class action. The trial court's order stated:
 "The plaintiff Riley Jackson was a class member in a case styled Batton v. First Family Financial Services, Inc., CV 97-738, which was the subject of a voluntary settlement with First Family and a class of persons who had purchased credit life insurance on the `gross' basis. The settlement allowed for opt outs, and Mr. Jackson exercised his right to opt out of that class settlement and pursue his own action and remedies here.
 "While this is clearly not the typical case where a defendant invokes the litigation process and thereby waives the right to seek arbitration, it is a case in which there are issues of waiver to be considered. First Family not only invoked the litigation process, [it] used the Court of Calhoun County, Alabama to effectuate the settlement of a class action involving thousands of consumers. While the specific issue upon which Batton was premised is distinguishable from the issues in this case, it is undisputed that the retail installment contract giving rise to the Batton action and settlement is the same retail installment contract which underlies the instant case.
 "First Family, then, availed [itself] of the Court system and the judicial process to effectuate a settlement that [it] obviously [was] satisfied with, or [it] would not have entered into it. Now, having used the litigation process to obtain a result [it] sought, [it wishes] to avoid that same litigation process as to this plaintiff who exercised a right which [it] provided to him through the judicial system in Batton.
 "It could be argued that First Family will use the litigation process only so long as [it controls] the result, and that otherwise, [it] will move to compel arbitration. This emphasizes one of the inherent dangers in arbitrating consumer issues.
 "The Court finds that First Family not only `substantially invoked' the litigation process, but indeed, used the litigation process to achieve [its] goals in the Batton case from which the instant case arose, and thereby waived [its] right to now move to compel arbitration.
 "Additionally, the Court has inquired of counsel at argument as to the contents of the class notice in Batton, and has reviewed the notice included in the plaintiff's response to the motion to compel arbitration. The function of a notice in a class action is to give the class members full and fair notice of the rights and remedies being litigated on behalf of the absent class members. The Batton notice gives to the class members the right to opt out and pursue their own individual remedies; however, it is inadequate in failing to further advis[e] them that to opt out of litigation, they may lose their very right to litigate.
 "The Court therefore further finds that the motion to compel arbitration is due to be denied because there was no knowing, willing waiver of the right to litigate when the plaintiff exercised the right given to him by First Family in opting out of the underlying litigation."
 II.
First Family contends that the trial court erred in denying its motion to compel arbitration, on the basis that it had substantially invoked the litigation process. *Page 1127 
First Family maintains that it is entitled to compel Jackson to arbitrate his claims against it in this case because Jackson opted out of the Batton class action; because the loan that is the subject of this case was not at issue in the class action; and because Jackson has asserted claims that were not raised in the class action. Jackson contends that the trial court ruled correctly because First Family "availed itself of the Courts of Alabama to enter into a settlement of a class action covering a period of twenty (20) years" and because that settlement proceeded to a conclusion. He maintains that First Family made such a substantial invocation of the litigation process that it waived its right to compel arbitration of claims brought by persons who opted out of the class.
We need not decide whether First Family waived its right to compel arbitration of claims concerning its alleged overcharging of customers for credit-life-insurance premiums brought by persons who opted out of the Batton class and elected to pursue their claims on an individual basis. Although Jackson was a member of the Batton class, he has not pursued in this lawsuit any claims that were pursued by the Batton class. Those claims could have arisen only in regard to loans made from November 15, 1985, through November 15, 1995, which was the period that defined membership in the class. Jackson's complaint in this case refers only to a loan he obtained from First Family on August 20, 1997, far beyond the period covered by the Batton class action. Furthermore, the gravamen of Jackson's complaint in this case is the allegation that First Family misrepresented to him that it relayed to an insurance company all credit-life-insurance premiums collected from him, while suppressing from him the fact that it retained a percentage of those premiums for its own use. The complaint does not allege that First Family overcharged Jackson for those premiums — overcharging was the alleged wrongdoing at issue in the Batton class action. The only relationship this case has with the Batton class action is that First Family and Jackson were both parties in that earlier, different litigation.
The question presented here is whether, by participating as a defendant in the Batton class action, First Family waived its right to compel Jackson to arbitrate his claims against it alleging fraudulent misrepresentation, suppression, and breach of fiduciary duty, all arising out of the loan transaction of August 20, 1997. We conclude that it did not. This Court has never looked to previous litigation to determine whether a defendant seeking to compel arbitration has substantially invoked the litigation process. Indeed, we have declined to do so.
In Ex parte Merrill Lynch, Pierce, Fenner Smith, Inc., 494 So.2d 1
(Ala. 1986), the plaintiff sued Merrill Lynch and others in the Jefferson Circuit Court on April 4, 1984. In June 1984, Merrill Lynch moved to stay the action to await the outcome of prior pending federal-multidistrict class-action litigation in which it was a defendant and the plaintiff was a member of the class. On January 25, 1985, the plaintiff opted out of the class in the federal action. On April 18, 1985, Merrill Lynch moved to compel arbitration. The trial court denied its motion, and Merrill Lynch petitioned this Court for a writ of mandamus directing the trial court to grant its motion to compel arbitration.[2] This Court wrote: *Page 1128 
"[Merrill Lynch] did not substantially invoke the litigation process in the case before us. The defendants simply filed a motion to compel arbitration and stay proceedings pending arbitration; indeed, the defendants did not even file an answer to plaintiff's complaint." 494 So.2d at 3. The Court addressed Merrill Lynch's participation in the federal class-action litigation only to the extent that it addressed the plaintiff's argument that she had been prejudiced by the delay between her filing of the complaint and Merrill Lynch's filing of its motion to compel arbitration:
 "Plaintiff argues that the defendants waived the right to arbitrate by waiting over a year before filing the motion to compel arbitration. Plaintiff, however, waited nearly ten months before she filed notice with the court that she was opting out of the class in the pending federal multidistrict litigation in New York. Defendants had no reason to seek arbitration before plaintiff's opt-out, as they could have reasonably believed that plaintiff would obtain her relief in the federal suit, and, consequently, that the action in Jefferson County would then be dismissed. Defendants filed the motion to compel arbitration less than three months after plaintiff opted out of the federal suit. We cannot find that this delay caused plaintiff any prejudice."
Id. The Court did not consider the class-action litigation, which had involved the same claims that the plaintiff brought against Merrill Lynch in Jefferson County, in determining whether Merrill Lynch had substantially invoked the litigation process and thereby waived its right to compel arbitration.
Likewise, we have considered only First Family's activity in the case initiated by Jackson in February 1999. We will find a waiver of the right to compel arbitration only when "the party seeking arbitration has so substantially invoked the litigation process that to compel arbitration will substantially prejudice the party opposing it." GeorgiaPower Co. v. Partin, 727 So.2d 2, 7 (Ala. 1998). In Companion LifeInsurance Co. v. Whitesell Manufacturing, Inc., 670 So.2d 897 (Ala. 1995), this Court said:
 "Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case."
670 So.2d at 899.
The record in this case shows unequivocally that First Family did not substantially invoke the litigation process before it moved to compel arbitration. The first document First Family filed was its motion to compel arbitration. Like the defendant in Merrill Lynch, First Family did not even answer the complaint. The only other documents in the record that First Family filed are its brief in support of its motion to compel arbitration, evidentiary filings also in support of that motion, and its notice of appeal to this Court. Jackson had the heavy burden of proving both that First Family had substantially invoked the litigation process and that he was prejudiced thereby. See Thompson v. Skipper Real EstateCo., 729 So.2d 287 (Ala. 1999). He did not meet that burden. Because Jackson did not prove that First Family had substantially invoked the litigation *Page 1129 
process, we need not address the element of prejudice.
We conclude that the trial court could not properly deny First Family's motion on the basis that it had waived its right to compel arbitration.
 III.
Jackson argues that even if we conclude, as we have concluded, that First Family did not waive its right to compel arbitration of his claims against it, he should have the opportunity to conduct "such discovery as may be needed to complete the record as to whether the arbitration provision in question is binding upon [him]." Because he claims that the arbitration provision is unconscionable, he argues that he is entitled to conduct discovery and to present evidence to the trial court in order to prove his claims. Jackson relies on § 7-2-302(2), Ala. Code 1975, which states:
 "When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."
We have remanded a case to the trial court for further proceedings on a record that reflected two attempts to amend the complaint further to provide additional facts. See Jack Ingram Motors, Inc. v. Ward,768 So.2d 362 (Ala. 1999). Nevertheless, under the circumstances presented by this present case, we conclude that no remand is warranted.
Jackson alleges in his complaint that First Family "knowingly and willfully" suppressed from him the existence of the arbitration clause and "the fact that by signing the contract containing the arbitration clause he was waiving his Constitutional right to a trial by jury." One who reviews the arbitration agreement that Jackson signed (quoted above) — an agreement appearing in a separate document and not appearing merely as one clause among many clauses in a contract — will find this a curious argument. See Green Tree Agency, Inc. v. White,719 So.2d 1179 (Ala. 1998) (stating that there can be no fraudulent suppression when the matter allegedly suppressed is disclosed to the plaintiff in a contract that the plaintiff could have read and understood). Furthermore, this Court has previously reviewed an arbitration agreement identical to the one Jackson executed. In FirstFamily Financial Services, Inc. v. Rogers, 736 So.2d 553 (Ala. 1999), the plaintiffs, the Rogerses, argued that they had not agreed to arbitrate, but we noted that that argument was "based on the undisputed fact that they failed to read the 1997 document." Id. at 558. They contended that they did not understand what the document said and that they were misled into signing it.[3] We concluded that the arbitration agreement the Rogerses executed in connection with their loan from First Family was clear and that in "unmistakable terms" it obligated them to arbitrate their claims against First Family. Id.
In the trial court and in his brief before this Court, however, Jackson also claims that the arbitration agreement was unconscionable and argues that he should have the opportunity to conduct discovery in order to prove that claim. Before the trial court, Jackson argued that the agreement was unconscionable because, he says, he was unsophisticated, he had no meaningful choice in whether to sign the agreement, *Page 1130 
the parties had unequal bargaining power, and the terms of the agreement unreasonably favored First Family. Before this Court, he claims that the arbitration agreement was an adhesion contract, that First Family was more sophisticated than he, and that First Family was in a stronger bargaining position, and he argues that he needs to conduct discovery in order to prove those claims.[4] First Family contends, however, that Jackson is not entitled to discovery. It argues that Jackson has never indicated what kind of discovery he wishes to pursue; that discovery would not assist Jackson in challenging the enforceability of the arbitration agreement in this case because this Court has previously rejected unconscionability arguments similar to Jackson's arguments; and that Jackson's claims must be presented to the arbitrator because, it argues, he alleges fraud in the inducement as to the entire loan agreement, not as to the arbitration agreement alone.
First Family correctly states that we have resolved many of Jackson's challenges to the arbitration agreement. See, e.g., Green Tree Fin.Corp. of Alabama v. Wampler, 749 So.2d 409 (Ala. 1999); Ex parte Parker,730 So.2d 168 (Ala. 1999); Ex parte McNaughton, 728 So.2d 592 (Ala. 1998), cert. denied, 528 U.S. 818, 120 S.Ct. 59 (1999); Ex parte Napier,723 So.2d 49 (Ala. 1998). Jackson is correct, however, in arguing that the issue of unconscionability of an arbitration clause is a question for the court and not the arbitrator. Wampler, 749 So.2d at 415. Jackson is also correct in stating that in the cases cited in this paragraph, among others, we have discussed the kind of record that might support a finding that an arbitration clause is unconscionable — a record showing that the plaintiff presented substantial evidence supporting the claim that the clause was unconscionable.
The problem in this case is that Jackson did not present the substantial evidence we have discussed in those cases mentioned in the preceding paragraph, but seeks the opportunity to create a record containing such evidence. Jackson asked for an opportunity to conduct discovery, but he offered no evidence whatever in opposition to First Family's motion to compel arbitration. Discovery is not necessary in order for a party to present evidence, such as the party's affidavit detailing the facts about which he has knowledge, or a compilation of information regarding the number of finance companies that will not make consumer loans without the borrower's signing an arbitration clause or agreement. We recently addressed a similar question in FleetwoodEnterprises, Inc. v. Bruno, 784 So.2d 277 (Ala. 2000). In that case, the plaintiff had requested an evidentiary hearing, but had submitted no evidence opposing the defendant's motion to compel arbitration. Justice Lyons, in a special concurrence in FleetwoodEnterprises, wrote:
 "It is well settled that a motion to compel arbitration is analogous to a motion for summary judgment. After a motion to compel arbitration has been made and supported, the burden is on the nonmovant to present evidence indicating that the supposed arbitration *Page 1131 
agreement is not valid or does not apply to the dispute in question.
 "None of [the plaintiff] Bruno's three responses to the motions to compel arbitration was supported by any evidentiary material. Bruno's requests for an evidentiary hearing, standing alone, are not the equivalent of submission of evidence. We do not permit a party to defeat an opposing party's motion for summary judgment simply by requesting an evidentiary hearing. In those instances where we review an interlocutory order denying a motion for summary judgment by entertaining a petition for a writ of mandamus, or by permitting an appeal pursuant to Rule 5, Ala.R.App.P., it would be improper to uphold the order denying the motion if the record before us was insufficient to justify the denial. We cannot justify disparate procedural treatment based simply on the fact that the underlying facts of this case may, if properly presented, demonstrate unconscionability of an arbitration agreement."
784 So.2d at 281-82 (Lyons, J., concurring specially) (citations and footnotes omitted). Like the Bruno plaintiff's requests for a hearing, Jackson's requests for discovery are not the equivalent of the submission of evidence. A party must submit evidence in some form in order to preserve for appellate review that party's contention of unconscionability as a defense to the enforcement of an arbitration agreement.
 IV.
The trial court erred in denying First Family's motion to compel arbitration. The order denying that motion is therefore reversed, and the cause is remanded for the trial court to enter an order granting that motion.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, Houston, See, Brown, Johnstone, and England, JJ., concur.
[1] Marie Jackson is not a party in Riley Jackson's lawsuit against First Family.
[2] We note that now the proper method for asking this Court to review an order denying a motion to compel arbitration is a direct appeal. First Family followed the proper procedure in this case. See Dean WitterReynolds, Inc. v. McDonald, 758 So.2d 539 (Ala. 1999).
[3] The Rogerses also made a financial-hardship argument similar to the one this Court rejected in Ex parte Dan Tucker Auto Sales,Inc., 718 So.2d 33 (Ala. 1998).
[4] Jackson also poses several questions about the settlement notice he received in the Batton case: Whether it led class members to believe that "arbitration was being released along with claims," whether the class notice was ambiguous, and whether the settlement agreement contained language that First Family inserted to protect its own interests. Again, Jackson's claims against First Family in this case are not the same as the class claims made against First Family in the Batton
case; therefore, we find no relevance here to his arguments concerning the class notice in Batton.