Carl A. Welch sued Premiere Automotive Group, Inc., doing business as Premiere Pontiac Buick GMC Toyota ("Premiere"); AmSouth Bank, N.A. ("AmSouth"); Charles Mitchell; and Joe Plexico, alleging suppression, misrepresentation, conspiracy, and a violation of Alabama's Deceptive Trade Practices Act, § 8-19-1 et seq., Ala. Code 1975. All claims related to the sale and financing of an automobile. At all pertinent times herein, Mitchell and Plexico were employees of Premiere. The defendants moved to compel arbitration of Welch's claims; the trial court denied their motions. The defendants appeal from the orders denying their motions to compel arbitration.[1] We reverse and remand with instructions.
 I. Factual Background
Welch's complaint alleges that his daughter, Amy Welch Andrews, had financed with AmSouth the purchase of a 1999 Toyota Camry automobile from Premiere. Welch alleges that his daughter signed his name to the sale documents without his permission, after he had expressly *Page 1080 
informed Mitchell and Plexico, as agents of Premiere, that he would not sign the documents if he was listed as the buyer. Welch further alleges that Mitchell later advised Andrews that he had talked to Welch and that her father had approved her signing his name to the sale documents.
Several weeks after the sale, according to the complaint, AmSouth mailed Welch a payment book. Welch says he then advised AmSouth that he did not know what he had supposedly purchased, and he says that AmSouth advised him that he had purchased a 1999 Toyota Camry. Welch says that he told AmSouth that he had not purchased the automobile. According to the complaint, AmSouth assured Welch that it would contact Premiere and AmSouth would call Welch back.
The complaint states that at a later date Plexico telephoned Welch and instructed him to return the automobile to the dealership by 1:00 p.m. that same day. Welch says that Plexico told him that if he failed to do so, Premiere would prosecute his daughter for "grand theft." At some time thereafter, according to the complaint, Welch applied for a loan for himself but was refused credit because of "excessive obligations in relation to income." Welch says that a few months later, AmSouth notified him that the account on the Camry was in arrears, and he says he again told AmSouth that he had not purchased the automobile. Welch's complaint demands an unspecified amount of compensatory and punitive damages.
 II. The Proceedings Below
Premiere, Mitchell, and Plexico (hereafter referred to collectively as "the Premiere defendants") filed a motion to stay the action and to require Welch to submit his claim to binding arbitration pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"). The motion was based upon a written agreement to arbitrate included in the documents allegedly executed by Welch. The Premiere defendants attached an affidavit given by Mitchell, who testified that Andrews presented the arbitration agreement to him bearing what was purported to be Welch's signature, and who further testified that Andrews represented to him at that time that she had obtained her father's signature on the arbitration agreement and on other documents in connection with the purchase of the Toyota. AmSouth filed a motion requesting enforcement of the arbitration agreement set forth in a retail installment contract that also bears the purported signature of "Carl A. Welch."
The terms of the applicable agreements are not material, because Welch has not challenged in this appeal the scope of the agreements to arbitrate. Welch unequivocally denies signing any of the documents that would have been necessary to purchase a vehicle from Premiere or to finance it with AmSouth.
Shortly after the motions to compel arbitration had been filed, Welch filed materials in opposition, attaching his and his daughter's affidavits. Four days later, the trial court summarily denied the motions to compel arbitration filed by the Premiere defendants and AmSouth. On the next day, the Premiere defendants moved the court for leave to conduct limited discovery as to matters relating to the enforceability of the arbitration agreements at issue. A hearing on this motion was at that time set for approximately one month later, but, on the next day, a representative of the trial court contacted the Premiere defendants' counsel and advised that the hearing on their motion for leave to conduct discovery would have to be rescheduled. Welch thereafter responded to the motion by contending that the trial court's order denying *Page 1081 
arbitration rendered the motion moot. Premiere and AmSouth thereafter filed timely notices of appeal.[2]
 III. Issues
All parties agree that there must be a trial on the issue of the making of the agreements to arbitrate. The only issues before us are the timing of the trial and, if the trial is to take place before any trial of the underlying issues in the action, whether discovery limited to the issue of execution of the agreements is appropriate.
 A. Timing of the Trial
Under the provisions of § 4 of the FAA, "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." If a jury has been demanded, the trial court "shall" refer the issues to a jury. "If the jury find that an agreement for arbitration was made . . ., the court shall make an order summarily directing the parties to proceed with the arbitration. . . ." Id.
Our caselaw has analogized the practice on motions to compel arbitration to motions for summary judgment. In Southern Energy Homes,Inc. v. Harcus, 754 So.2d 622, 625-26 (Ala. 1999), Justice See wrote:
 "This Court reviews de novo a trial court's denial of a motion to compel arbitration. See Crimson Industries, Inc. [v. Kirkland], 736 So.2d [597,] 600 [(Ala. 1999)]; Patrick Home Center, Inc. v. Karr, 730 So.2d 1171, 1171 (Ala. 1999). This Court has stated that a trial court's duty in ruling on a motion to compel arbitration is analogous to its duty in ruling on a motion for summary judgment and that the trial court is to hold a hearing and determine whether there are genuine issues of material fact concerning the making of, or performance of, an arbitration agreement. See Allied-Bruce Terminix Companies, Inc. v. Dobson, 684 So.2d 102, 108 (Ala. 1995). `"[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question."' Ryan's Family Steak Houses, Inc. v. Regelin, 735 So.2d 454, 457 (Ala. 1999) (quoting Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995)) (alteration in Regelin)."
Because the facts before us in Harcus were similar to the facts presented in these appeals, the result we reached in Harcus is instructive for our resolution of the questions raised in these appeals. In Harcus, we stated:
 "One of the major issues on appeal is whether the Harcuses agreed to arbitrate their claims against Southern Energy. The Harcuses argue that Southern Energy cannot compel arbitration of their claims because, they say, they did not agree to arbitrate any disputes with Southern Energy. Specifically, the Harcuses argue that they did not sign the Arbitration Agreement contained in the written warranty. . . .
 "`This Court has clearly and consistently held that a party cannot be required to submit to arbitration any dispute he has not agreed to submit.' Ex parte Stallings Sons, Inc., 670 So.2d 861, 862 (Ala. 1995) (internal quotation marks omitted). In determining whether *Page 1082 
the parties agreed to arbitrate a dispute, this Court applies general Alabama contract-law principles. See Quality Truck Auto Sales, Inc. v. Yassine, 730 So.2d 1164, 1167-68 (Ala. 1999) (`This Court is required to compel arbitration if, under "ordinary state-law principles that govern the formation of contracts," the contract containing the arbitration clause is enforceable.') (quoting Crown Pontiac, Inc. [v. McCarrell], 695 So.2d [615,] 617 [(Ala. 1997)]). The FAA requires this Court, in applying Alabama contract law to questions of arbitrability, to resolve `any doubts concerning the scope of arbitrable issues . . . in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.' Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
 "We cannot determine, from the scant record before us, whether the Harcuses agreed, either by ratification or otherwise, to submit their claims against Southern Energy to arbitration. Although the record on appeal contains some evidence, we do not have a sufficient basis to resolve conflicts in that evidence. Therefore, we must remand this case for the trial court to make specific factual findings. On remand, the trial court is to conduct further proceedings and to take evidence as may be necessary, including testimony from such witnesses, by deposition or otherwise, as the parties choose to present. The trial court shall file a return to this remand within 42 days of the date of this opinion. The return to remand shall include a transcript of any proceedings conducted by the trial court on remand, any evidence submitted by the parties, and the trial court's findings of fact and conclusions of law. See Eubanks v. Hale, 752 So.2d 1113, 1120 (Ala. 1999)."
754 So.2d at 626-27 (emphasis added).
The directions for further proceedings in Harcus, requiring a return to this Court following the remand, clearly contemplated that the trial court would conduct a proceeding dealing solely with the issue whether the Harcuses had executed the agreement to arbitrate. Welch relies uponEx parte Meadows, 782 So.2d 277 (Ala. 2000), as authority for the proposition that when a jury is demanded, it must decide whether an arbitration agreement is enforceable. Welch correctly interpretsMeadows. However, Meadows also supports the rule that a jury should be convened solely for the purpose of determining the issue of the execution of the arbitration agreement. In Meadows, Justice England wrote:
 "Meadows unequivocally denied signing the February 7, 1996, document that purports to bear his signature; thus, in effect, he denies the existence of a February 7, 1996, contract. He cannot be compelled to arbitrate the issue whether he entered into a contract in February 1996. Meadows provided substantial evidence to support his contention that he did not sign the document. He testified under oath that he did not sign the document, and he presented testimony from an expert, Dr. Roper, who corroborated Meadows's testimony that he did not sign the document. Meadows was entitled to have a jury determine whether he signed the February 7, 1996, document that contained the arbitration provision.
 "We grant the petition and issue the writ of mandamus. The circuit judge is directed to conduct a trial by jury only *Page 1083 on the issue whether Meadows signed the document dated February 7, 1996."
782 So.2d at 280-81 (emphasis added).
The cases now before us require that we enter an order similar to the orders we entered in Harcus and Meadows. The trial court had before it conflicting evidence, in the form of affidavits, as to the execution of the agreements. The appropriate method of resolving this conflict is a jury trial limited to the issue whether Welch entered an arbitration agreement with Premiere and/or with AmSouth.
 B. Propriety of Discovery
There remains the issue of the extent to which the parties, before the court holds a hearing on the issue whether Welch entered an agreement or agreements to arbitrate, are entitled to discovery limited to the issues to be tried concerning the existence of agreements to arbitrate. We do not write to this issue on a clean slate. In Ex parte Jim BurkeAutomotive, Inc., 776 So.2d 118 (Ala. 2000), we recognized the propriety of permitting discovery when the making of an arbitration agreement is in issue:
 "The Federal Arbitration Act makes enforceable a written arbitration provision in a contract evidencing a transaction involving interstate commerce. 9 U.S.C. § 2; see Rogers Found. Repair v. Powell, 748 So.2d 869, 871-72 (Ala. 1999). However, if there is a question whether the parties actually entered an agreement to arbitrate, that question is for the court to decide. See Premiere Chevrolet, Inc. v. Headrick, 748 So.2d 891 (Ala. 1999). The trial judge did not err in allowing the parties to conduct discovery. However, he did err in failing to limit the discovery to be conducted. See Jack Ingram Motors, Inc. v. Ward, 768 So.2d 369 (Ala. 1999); Universal Underwriters v. Dutton, 736 So.2d 564 (Ala. 1999); and Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160
(1998) (allowing for limited discovery without waiver of right to arbitrate). We conclude, and the parties agree, that discovery should be limited to the question whether [the plaintiff] agreed to arbitrate his dispute with the defendants."
776 So.2d at 121-22 (emphasis added).
We have also addressed the question of what record is necessary to support the right to have limited discovery when the enforceability of an arbitration agreement is at issue and that issue is appropriate for resolution by the trial court. In First Family Financial Services, Inc.v. Jackson, 786 So.2d 1121 (Ala. 2000), this Court addressed the parties' right to discovery when the court was called upon to resolve the issue whether an arbitration agreement was unconscionable:
 "The problem in this case is that [the plaintiff] Jackson did not present the substantial evidence we have discussed in those cases mentioned in the preceding paragraph, but seeks the opportunity to create a record containing such evidence. Jackson asked for an opportunity to conduct discovery, but he offered no evidence whatever in opposition to First Family's motion to compel arbitration. Discovery is not necessary in order for a party to present evidence, such as the party's affidavit detailing the facts about which he has knowledge, or a compilation of information regarding the number of finance companies that will not make consumer loans without the borrower's signing an arbitration clause or agreement. We recently addressed a similar question in Fleetwood Enterprises, Inc. v. Bruno, 784 So.2d 277
(Ala. 2000). In that case, the plaintiff had requested an evidentiary hearing, but had submitted no evidence opposing the defendant's motion to compel arbitration. *Page 1084 
Justice Lyons, in a special concurrence in Fleetwood Enterprises, wrote:
 "`It is well settled that a motion to compel arbitration is analogous to a motion for summary judgment. After a motion to compel arbitration has been made and supported, the burden is on the nonmovant to present evidence indicating that the supposed arbitration agreement is not valid or does not apply to the dispute in question.'"
786 So.2d at 1130-31 (citations omitted).
Welch and his daughter responded to Mitchell's affidavit by presenting evidence that supported Welch's allegations that the signatures on the sale documents that purported to be Welch's signatures were invalid. Under the circumstances, the parties have the right to conduct discovery limited to the issue of the making of the arbitration agreements. The United States District Court for the Southern District of New York has discussed the scope of discovery on an issue relating to the execution of an arbitration agreement, in Blatt v. Shearson Lehman/American Express,Inc., (No. 84 Civ. 7715-CSH, July 16, 1985) (S.D.N Y 1985) (unpublished). We find the district court's comments to be helpful in this case:
 "Here Mrs. Blatt alleges that she never executed the contract at all. That is precisely the issue which, under Almacenes [Fernandez, S.A. v. Golodetz, 148 F.2d 625 (2d Cir. 1945)], must be resolved by the Court under section 4 of the [Federal Arbitration] Act.
 "I will schedule a bench trial on this issue after the parties have completed pre-trial discovery, which in my experience is useful in preparing such issues for resolution. Depositions should be taken of both plaintiffs, and of representatives of defendants with knowledge of the facts, in order to ascertain the circumstances under which the agreement attached to the motion papers came into being. (Parenthetically I note that plaintiff Irwin Blatt makes no allegation that the signatures purporting to be his are not genuine.) During the course of discovery, Mrs. Blatt will also be required, if so requested by defendants, to provide known samples of her handwriting, and to execute handwriting exemplars."
We also recognized in Meadows the utility of expert testimony concerning handwriting, on the issue of the execution of an arbitration agreement; the plaintiff in Meadows presented the affidavit of a forensic examiner concerning the questioned documents.
 IV. Conclusion
The orders of the trial court denying the motions to compel arbitration are reversed and this cause is remanded for limited discovery and for a hearing on the issue of the execution of the arbitration agreements.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Houston, See, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
Moore, C.J., dissents.
[1] We note that Mitchell and Plexico are not named as appellants on the notice of appeal filed by Premiere. The "appellants' brief," however, describes Mitchell and Plexico as appellants and argues on their behalf, as well on behalf of Premiere. Welch does not contend that Mitchell and Plexico are not parties to this appeal. We therefore will treat Mitchell and Plexico as appellants. See J.C. Jacobs Banking Co. v.Campbell, 406 So.2d 834, 851 (Ala. 1981).
[2] The filing of the notices of appeal prevented the trial court from reaching the Premiere defendants' motion on the issue of limited discovery as to enforceability of the arbitration agreement. However, because the trial court had postponed the hearing and the pendency of the motion for discovery would not have suspended the time for taking an appeal, and because Welch does not contend that the appeal is premature, we reach the merits. *Page 1085