[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1061 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1062 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1063 
These four appellate proceedings arise out of two orders entered by the Bullock Circuit Court compelling Unum Life Insurance Company of America ("Unum") to arbitrate the claims asserted against it by more than 400 individuals. One order relates to the proceeding initiated in that court by Rosemary Wright and 413 other claimants ("the Wright case") and the other order relates to the proceeding brought individually by Susan Coleman ("the Coleman *Page 1064 
case"). Unum appeals in each case as to that aspect of the orders requiring it to proceed to arbitration (cases no. 1022043 and 1030066) and petitions for a writ of mandamus as to that aspect of each order necessarily, although not explicitly, denying its challenge to venue in Bullock County (cases no. 1022060 and 1030069).
Among the issues presented is one of first impression in this State: What legal procedures may a party seeking enforcement in the circuit court of a contractual obligation to arbitrate a dispute employ when there is no independent court proceeding pending? We must also decide the proper venue for the court filings by the plaintiffs in these cases. We issue the writ of mandamus in case no. 1030069 (the Coleman case); we deny the writ in case no. 1022060 (the Wright case); we dismiss the appeal in case no. 1030066 (the Coleman case); and we affirm the appeal in case no. 1022043 (the Wright case).
Unum and the plaintiffs agree that in order to understand the Bullock County proceedings, one must have a full understanding of prior proceedings in the Sumter Circuit Court. Accordingly, we take note of the following pertinent chronology.
 Sumter County Litigation
During the first six months of 2002, the law firm of Beasley, Allen, Crow, Methvin, Portis Miles ("the Beasley firm") filed four single-plaintiff actions in the Sumter Circuit Court against Unum and its alleged agent, Mike Howard, asserting fraud-based claims relating to the plaintiffs' purchase of group long-term disability-insurance coverage in connection with their employment with the Sumter County School Board. All the plaintiffs were residents of Sumter County. In August of that year the Beasley firm filed a similar action in the Sumter Circuit Court involving 13 plaintiffs. Still later in August and then in October, the Beasley firm filed in the Sumter Circuit Court a total of four more essentially identical actions against Unum and Howard; the plaintiffs in those four actions included Sumter County residents and residents of other counties. There were at that point fewer than 200 plaintiffs in the nine cases, and the majority of them were Sumter County residents. Along the way, either Unum, through its attorneys with the law firm of Sirote Permutt, P.C. (the "Sirote firm"), or the plaintiffs, through the Beasley firm, filed motions to compel arbitration.
On December 9, 2002, Unum served its "Motion to Consolidate and Arbitrate" with respect to all nine of the cases; the motion stated in pertinent part:
 "In each of these cases, either the Plaintiff(s) or Defendant Unum has moved to compel arbitration since all the Plaintiffs in these cases executed identical arbitration agreements. Likewise, there are currently pending before the Court two Motions to Consolidate the above-referenced cases. All the parties to the above-referenced cases agree that the Plaintiffs [sic] claims are due to be arbitrated. Because there are now so many separate outstanding motions relating to consolidating and arbitrating these cases, in an effort to simplify, Unum, with full consent of all other parties, requests that the Court enter an Order consolidating these cases and compelling them to arbitration.¹ The parties have agreed that the arbitrator will be mutually agreed upon by the parties and, therefore, it will be unnecessary for the Court to appoint an arbitrator. Attached hereto for the Court's convenience is a proposed Order consolidating the above-referenced cases and compelling them to arbitration.
 "¹ It is UNUM's understanding that additional Plaintiffs, by and through the *Page 1065 
same counsel representing the Plaintiffs in these cases listed herein, have recently or will soon file Complaints virtually identical to the Complaints in the cases listed herein. Said Complaints will name the same Defendants and contain the same allegations as those in the cases listed herein. All additional Plaintiffs executed arbitration agreements identical to the arbitration agreements executed by the Plaintiffs identified herein. Accordingly, the parties will notify the Court when the additional cases have been filed so they can be consolidated and arbitrated with the cases listed herein."
Previously, on November 20, 2002, the Beasley firm had filed another action in Sumter County against Unum and Howard on a behalf of Pamela P. McGee and 83 other plaintiffs, only 4 of whom were residents of Sumter County ("the McGee case"). Unum contends that its counsel were unaware of the McGee action at the time they filed the motion to consolidate and arbitrate. On December 18, 2002, the Beasley firm filed another action in Sumter County against Unum and Howard asserting essentially the same claims as before, on behalf of Shirley Larde and 57 other plaintiffs, only 4 of whom were residents of Sumter County ("theLarde case"). The Beasley firm filed motions to compel arbitration in those two cases, but, on January 3, 2003, Unum filed motions to dismiss or for a change of venue in those cases.
On January 22, 2004, Howard's attorney, Stephen E. Whitehead, wrote to Christopher E. Sanspree of the Beasley firm and James S. Williams of the Sirote firm to provide the names of three individuals acceptable to Howard as arbitrators, one of whom was Richard Bell, a Birmingham attorney. On January 28 Williams e-mailed to Sanspree and Whitehead the names of seven acceptable candidates for arbitrators; that list included Bell. The next day Unum filed motions to dismiss or, in the alternative, to sever and to transfer the cases in the other five multi-plaintiff Sumter County cases, seeking to have dismissed or transferred only the claims of the plaintiffs not residing in Sumter County. Howard took the opposite position, moving to compel arbitration in all of the cases.
On January 31, 2003, Sanspree wrote to Williams and Whitehead to advise them that the plaintiffs had selected Bell to serve as the arbitrator in the "Unum cases"; on that same day Sanspree wrote to Sumter County Circuit Judge Eddie Hardaway, Jr., referencing all of the cases preceding those filed by McGee and Larde, to advise Judge Hardaway that "counsel for all parties have agreed to use Richard Bell as arbitrator in the above referenced cases." Sanspree sent copies of that letter to both Williams and Whitehead. The Beasley firm also filed oppositions to Unum's motions to dismiss or to sever and transfer the cases. On February 9, 2003, Judge Hardaway conducted a hearing on the motions, but no transcript of that hearing is contained in the record and there is no attempt pursuant to Rule 10(d), Ala. R.App. P., to reconstruct a record of the proceedings.
In a memorandum of law Unum filed with Judge Hardaway on February 13, 2003, in support of its motions for a dismissal or a transfer of the cases, it argued that the plaintiffs "are all employees of various state school boards throughout Alabama, and their claims against Unum and Howard are exclusively fraud-based claims related to the plaintiffs' purchase of group long-term disability insurance coverage provided in connection with their employment," but that of the "approximately *Page 1066 
320[1] plaintiffs" involved, "only about 25% are residents of Sumter County," whereas "220 or more of the 320 plaintiffs reside in one of 16 other counties of Alabama, and there are 19 plaintiffs who reside in Mississippi." Unum explained that in the first seven cases filed, more than 85% of the plaintiffs were either residents of Sumter County or alleged fraud occurring in Sumter County. Unum went on to explain that even after the next two actions were filed adding more nonresidents of Sumter County, the parties still agreed that, in the interest of judicial economy, the claims involved in the nine cases then pending should be consolidated and arbitrated. "At no time, however, did Unum agree to the consolidation and arbitration of any and allsubsequent similar cases filed in Sumter County against Unum and Mike Howard." Unum justified its change of position concerning arbitration of the claims of nonresident plaintiffs in the previously filed multi-plaintiff cases and in the cases subsequently filed by McGee and Larde as follows:
 "Of the 148 plaintiffs in McGee and Larde, only eight (5.5%) are residents of Sumter County and/or allege fraud occurring in Sumter County. Thus, with the filing of the McGee and Larde lawsuits, the total number of plaintiffs in these cases who reside in Sumter County and/or allege fraud occurring in Sumter County diminished drastically. Given the overwhelming number of plaintiffs in these cases who have absolutely no connection whatsoever with Sumter County, Unum is exercising its rights under the Alabama Rules of Civil Procedure and Alabama Code § 6-3-7(c) to seek the dismissal or transfer of the claims of all of the non-resident plaintiffs in the [seven multi-plaintiff lawsuits]."
On April 25, 2003, Judge Hardaway issued two orders. In the first, pertaining to only the four single-plaintiff cases, he ordered the claims involved to proceed to arbitration before Bell as the arbitrator. His second order, which is at the heart of some of the contentions the parties now present to this Court, reads as follows:
 "The Court having considered all arguments, motions, and pleadings, it is hereby ordered and decreed that all Motions to Dismiss Due to Improper Venue as it relates to the Plaintiffs listed in the attached Exhibit `A' are hereby GRANTED WITHOUT PREJUDICE.
 "It is further ordered and decreed that all Motions to Dismiss Due to Improper Venue as it relates to the Plaintiffs listed in the attached Exhibit `B' are hereby DENIED due to venue being proper in Sumter County, Alabama.
 "All pending Motions to Stay Proceedings and Compel Arbitration under the authority of the Federal Arbitration Act as it relates to Plaintiffs listed in Exhibits `A' and `B' are hereby GRANTED. Richard W. Bell shall serve as arbitrator as previously agreed upon by all parties."
Attached to that order as Exhibit A was a list of 206 plaintiffs, showing his or her respective "City" and "School System." Exhibit B listed the same information for 118 other plaintiffs.
On May 9, 2003, Unum filed a motion for clarification, asking Judge Hardaway to enter an order "clarifying only the Plaintiffs listed in Exhibit `B' attached to Court's Order be compelled to arbitration, *Page 1067 
and that Plaintiffs listed in Exhibit `A' be dismissed without prejudice."
On May 14, 2003, Williams wrote to Bell, with copies to Sanspree and Whitehead, to state that Unum's position was that the claims of the 206 plaintiffs identified in Exhibit A to Judge Hardaway's order were not destined for arbitration, enclosing a copy of the motion for clarification. On May 16, Sanspree filed in the Sumter Circuit Court a notice of dismissal, advising that "the Plaintiffs listed in Exhibit `A' hereby dismiss, without prejudice, all claims asserted against the Defendants" in the seven multi-plaintiff cases. Also on that date, counsel for Howard wrote Bell to advise him of Howard's willingness to have "the 206 cases be re-filed with you as the arbitrator." Sanspree filed a petition for arbitration with Bell covering the 206 cases, but Bell refused to take jurisdiction over Unum's objection. The parties advise in briefs that arbitration is proceeding before Bell as to all of the 118 Exhibit B plaintiffs.
 Bullock County Proceedings
On May 23, 2003, Sanspree filed in the Bullock Circuit Court, on behalf of Rosemary Wright and 413 other plaintiffs, a motion to compel arbitration, a petition for arbitration, and a motion to stay proceedings "of this matter." The 206 plaintiffs dismissed from the Sumter County cases were included among the 414 plaintiffs. In addition to Mike Howard, another alleged agent of Unum, Charles Niel, was joined as defendant.[2] The petition for arbitration asserted that during 2000-2002 the defendants had approached the plaintiffs in 26 named counties about purchasing "salary replacement" disability-insurance policies from Unum; that the defendants had misrepresented or suppressed certain information concerning the nature of the coverage afforded by the policies; and that the defendants had thereby fraudulently induced the plaintiffs to purchase the policies and authorize their respective boards of education to withdraw the premium payments from their paychecks. The plaintiffs demanded judgment against the defendants "in such an amount of compensatory and punitive damages as an arbitrator deems reasonable and may award, plus costs." The motion to compel arbitration referenced and attached "the arbitration agreement contained in the certificates of insurance issued to the plaintiffs" by Unum and moved the court to compel arbitration in accordance with the arbitration agreement and requested that the court choose an arbitrator if the parties could not mutually agree on one. Finally, the motion to stay invoked 9 U.S.C. § 3, a part of the Federal Arbitration Act ("the FAA"), as the basis for an order to stay the proceedings. (Sections of the FAA, codified as 9 U.S.C. § 1 et seq., are hereinafter cited simply as "FAA § ___.")
On June 10, 2003, the Beasley firm filed in the Bullock Circuit Court a similar motion to compel arbitration, a petition for arbitration, and a motion to stay in the name of a single plaintiff, Susan Coleman; in addition to Unum, only Unum's alleged agent Pat Womack was named as a defendant. The petition averred that in January 2000 Womack had approached Coleman about purchasing "an accidental death and dismemberment insurance policy"; that Womack had represented that the policy would pay a benefit should Coleman or her husband, who was the beneficiary under the policy, ever be injured accidentally; that based on those representations *Page 1068 
and ignorant of the material fact allegedly withheld that the policy would not cover her husband as a beneficiary, Coleman purchased the policy and began making premium payments; that in March 2002 her husband was accidentally injured, and Unum refused to pay the benefit as promised; and that Unum's promissory fraud had been discovered only within two years of filing the petition. Like the plaintiffs in the Wright case, Coleman sought such compensatory and punitive damages as an arbitrator might award. Attached to the motion to compel was the arbitration agreement contained in the Unum accidental and dismemberment insurance policy.
On June 19, 2003, the plaintiffs in the Wright case filed a supplement to their motion to compel arbitration, submitting various materials, including filings made in the Sumter County litigation.
On June 25, 2003, Unum filed a motion to dismiss in theWright case, directed to the petition for arbitration, and an "opposition," directed to the motion to compel arbitration. In both its motion to dismiss and its opposition, Unum challenged the procedural propriety of the filings by the plaintiffs in theWright case, as hereinafter discussed. Unum also asserted in both filings that venue was improper in Bullock County as to all but two of the plaintiffs, citing Ala. Code 1975, § 6-3-7, and arguing that, because Unum did not have a "principal office" in Alabama, venue would be appropriate only in the county where the alleged fraud occurred, pursuant to § 6-3-7(a)(1), or in the county in which the plaintiff resided, pursuant to § 6-3-7(a)(3). Accordingly, Unum argued that the claims of the plaintiffs who neither resided in Bullock County nor made claims based on the alleged occurrence of events in Bullock County were due to be dismissed without prejudice.
On July 6, 2003, Unum filed similar challenges in the Coleman
case.
On July 14, 2003, the plaintiffs in the Wright case filed a "Motion to Compel Arbitration in Accordance to the Agreement Between the Parties and Response to Defendant Unum's Opposition to Arbitration and Motion to Dismiss." In that motion, they detailed at length the prior proceedings in Sumter County and attached as exhibits numerous filings from that litigation, as well as the affidavits of 301 of the plaintiffs in the Wright
case attesting that the "Disability-Arbitration" agreement exhibited to each plaintiff's affidavit was, to the best of the affiant's knowledge, a true and complete copy of the arbitration agreement forming a part of his or her insurance policy issued by Unum. Another 48 identical affidavits were subsequently filed.
On August 15, 2003, Unum filed in the Wright case its "Supplemental Brief in Opposition to Plaintiffs' Motion to Compel Arbitration and in Support of Unum's Motion to Dismiss," setting out its version of the events in the Sumter County litigation and taking the position that the voluntary dismissal by 206 of the Sumter County plaintiffs of their claims had mooted the motion for clarification Unum had filed in Sumter County with Judge Hardaway. Pointing out that only two of the plaintiffs in theWright case resided in Bullock County or alleged that a fraud had occurred there, Unum insisted on the dismissal or transfer of the claims of the other plaintiffs, as to whom they argued that Bullock County was an improper venue.
On August 20, 2003, the plaintiffs in the Wright case filed a response to Unum's supplemental brief, taking the position that because Unum had previously agreed to arbitration, its improper-venue argument was simply "a red herring delay tactic." *Page 1069 
Also, on that date, Coleman filed a motion to compel arbitration, the contentions of which paralleled those made by the plaintiffs in the Wright case in their July 14 filing.
On August 22, 2003, Howard and Niel each filed a motion in theWright case requesting the court to compel the plaintiffs to submit their claims against them to arbitration. Both motions asserted that each plaintiff in the Wright case had been issued a policy by Unum and attached as an exhibit a copy of the "Disability-Arbitration" agreement contained in the policy and alleged to exist "between all of the parties." Howard and Niel, although non-signatories to the agreement, asserted their right to compel arbitration of the claims against them, citing caselaw in support of their assertion.
Also on August 22, 2003, Judge Burt Smithart of the Bullock Circuit Court conducted a hearing with respect to the motions to compel arbitration in the Wright case and the Coleman case. The transcript of that hearing reflects that counsel for all plaintiffs, counsel for Unum, and counsel for Howard were present. (Although the same law firm represents Howard and Niel in the Wright case, the attorney from that firm identified herself to the court only as counsel for Howard; no mention was made at the hearing of Niel or of Womack, a defendant in theColeman case. According to the case action summary sheet for that case, Womack was never served with process in it.) Counsel for Howard advised the court that Howard joined in the plaintiffs' motion to compel arbitration. Counsel for Unum then explained his view of the Sumter County proceedings, stating that Unum had challenged venue as to 206 of the plaintiffs and that Judge Hardaway had agreed with Unum and had dismissed those plaintiffs. Counsel for Unum asserted that because venue in Bullock County was also improper as to those 206 plaintiffs, and also as to all but two of the other plaintiffs in the Wright
case, the Bullock Circuit Court needed to consider the venue issue before it reached the arbitration issue. Counsel for the plaintiffs argued to the contrary, asserting that Judge Hardaway had compelled arbitration for all of the Sumter County plaintiffs, and that because at least one of the plaintiffs was a resident of Sumter County, venue in Sumter County was appropriate as to all under the "joinder" provisions of the Alabama Rules of Civil Procedure. Counsel for Unum acknowledged that Unum had initially sought arbitration in certain of the Sumter County cases, but stated that it had subsequently concluded that the arbitration agreement might not actually apply. Nonetheless, counsel stated, "[T]hat's another issue. That's not what I am here to argue. My position is venue is the issue that must be looked at first." Counsel for Unum reiterated that because venue in Bullock County was indisputably improper as to all but two of the plaintiffs, the rest of the cases needed to be dismissed, or severed and transferred, and that the joinder rules did not alter that fact. The hearing concluded with counsel for Unum arguing:
 "We agreed to arbitrate the 119 people in Sumter County and we are not backing down from that. We are still willing to do that because we agreed to do that. We never agreed to arbitrate anything beyond that. And for that we do have the right to take a different position and say, we don't want to arbitrate it; we don't think it applies. And that's what we are doing here."
On August 27, 2003, Judge Smithart entered the following order in the Wright case: *Page 1070 
 "This matter came before the Court on both the Plaintiffs' and Defendant Mike Howard's Motions to Compel Arbitration pursuant to the arbitration clause contained in Plaintiffs' insurance policies issued by Defendant Unum Life Insurance Company of America. Defendant Unum Life Insurance Company of America opposed said motions, arguing that the arbitration clause was not broad enough to encompass the Plaintiffs' claims in this lawsuit. However, Defendant Unum Life Insurance Company of America admitted during oral arguments that it had taken a contrary position in other counties in cases involving identical claims and identical arbitration clauses and admitted that it had argued in pleadings in other counties that said arbitration clause was broad enough to encompass identical claims of the plaintiffs in those cases.
 "The doctrine of judicial estoppel precludes [a party] from assuming a position in a legal proceeding inconsistent with one previously asserted. The doctrine of judicial estoppel is applied to uphold the integrity of the judicial system. Vincent v. First Alabama Bank, [883 So.2d 1231, 1235] (Ala.Civ.App. 2002).[3] It has long been the law in Alabama that `a party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter that is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts and where another would be prejudiced by his action.' Porter v. Jolly, 564 So.2d 434, 437 (Ala. 1990) (citing Dominex, Inc. v. Key, 456 So.2d 1047, 1058 (Ala. 1984); Brooks v. Peoples National Bank of Huntsville, 414 So.2d 917
(Ala. 1982); Russell v. Russell, 404 So.2d 662
(Ala. 1981)), Pendley v. Pendley, 581 So.2d 470, 472 (Ala. 1991).
 "Therefore, under the doctrine of inconsistent positions, or judicial estoppel, Defendant Unum Life Insurance Company of America is barred from arguing that the arbitration agreement is not broad enough to encompass the Plaintiffs' claims.
 "Even if Defendant Unum Life Insurance Company of America had not taken an earlier contrary position, the arbitration agreement is broad enough to encompass the Plaintiffs' claims in this case. The arbitration clause provides that `all claims' that arise from the Summary of Benefits shall be arbitrated. While the complaint [sic] is not clear as to the exact nature of the fraud claimed by the Plaintiffs, the Plaintiffs submitted numerous briefs and other materials that indicate their claims arise out of the Summary of Benefits. The issuance of an insurance policy involves interstate commerce and, therefore, Alabama's bar on pre-dispute arbitration agreements must succumb to the Federal Arbitration Act, 9 U.S.C. § 1, et seq.
 "Therefore, pursuant to the arbitration agreement provided to the Plaintiffs in this case, arbitration is the appropriate forum for the Plaintiffs to pursue their case. The Plaintiffs' and the Defendant Mike Howard's Motions to Compel Arbitration are hereby GRANTED.
 "Finally, the arbitration agreement submitted by the Plaintiffs provides that the parties shall agree on an arbitrator. Given the lengthy history of the parties and this case, along with its predecessor cases, the Court believes that a deadline *Page 1071 
would be appropriate for both the selection of the arbitrator and, pursuant to the contract, completion of the arbitration. It is thereby ORDERED, ADJUDGED and DECREED that the parties shall agree on an arbitrator within fifteen (15) days of the date of this Order. In the event the parties have not agreed on an arbitrator within fifteen (15) days as set forth above, the Court will appoint an arbitrator pursuant to 9 U.S.C. § 12.
 "Pursuant to the terms of the arbitration agreement, the parties shall have ninety (90) days to complete the arbitration from the date of this Order.
 "This matter is stayed pending the outcome of the arbitration and hereby transferred to the administrative docket."
On September 4, 2003, Judge Smithart entered an order in theColeman case identical in all respects to the one he entered in the Wright case, except that he phrased the opening paragraph of the order in the Coleman case slightly differently. That opening paragraph reads:
 "This matter came before the Court on the Plaintiff's Motion to Compel Arbitration and on the Defendant Mike Howard's Motion to Compel Arbitration. The Defendant UNUM Life Insurance Company of America opposed said motions, arguing that the arbitration clause was not broad enough to encompass the Plaintiff's claims. However, UNUM admitted during oral arguments that it had taken a contrary position in other counties, arguing that the same arbitration clause was broad enough to encompass claims of other Plaintiffs, said claims being identical to those made by the Plaintiff in this case."
Neither the parties nor the court had expressly referenced "[t]he doctrine of judicial estoppel" at any time before Judge Smithart issued his orders, but counsel for the plaintiffs had argued at the hearing that the position Unum had taken concerning arbitration in the Sumter County litigation ought to bind it in the cases brought in Bullock County. In particular, counsel for the plaintiffs argued at that hearing as follows:
 "UNUM in 118 of these cases, of these individual plaintiff cases, filed a motion to compel arbitration, so I believe ethically they would be unable to take the position in this case that arbitration is not appropriate.
". . . .
 ". . . Since UNUM has taken the position in other cases that arbitration is appropriate, I think they are bound to take that position in this case that the arbitration agreement is enforceable for these claims just as they did in the cases where they filed the motion to compel arbitration; and, likewise, that the parties are bound to arbitrate.
". . . .
 "And what they did in Sumter County is important for this fact: They took the position when they thought they were going to get sued or when they got sued, We've got to arbitrate. And when we said, Okay; we've got to arbitrate, you're right; there is a binding arbitration agreement, now they are wanting to back down from that because they think that arbitration may not be the most favorable place for them to have these cases. They cannot do that. The arbitration agreement is enforceable. They want to arbitrate when they think, well, we have not paid some of these claims and we're about to get popped by a Bullock County jury for a bunch of money; we've got to arbitrate that. But when it's a fraud claim, they think, well, we'd rather be where we can appeal to the Alabama Supreme Court on a fraud *Page 1072 
issue than in front of an arbitrator. They say, no, it doesn't apply, even though they initially said it did. They cannot take these inconsistent positions in court. The next fraud case, are they going to take another inconsistent position? That is an abuse of process."
At the hearing before Judge Smithart, counsel and the court seemed to focus exclusively on the Wright case; no express note was taken of the separate status of the Coleman case. Unlike 206 of the plaintiffs in the Wright case, Coleman had never been a party to the Sumter County litigation, her filings in Bullock County were her initial court filings, and she claimed fraud with respect to the sale of a type of Unum policy different from that sold to the other plaintiffs. Also, despite the reference to Howard in the order entered in the Coleman case, he was not a defendant in that action; rather the only individual defendant was Womack.
Unum timely filed notices of appeal and petitions for writ of mandamus. This Court has entered orders staying all further proceedings in this case, both in the trial court and in arbitration.
 Unum's Procedural Challenges
Unum contends that the Bullock Circuit Court erred in not granting its motions to dismiss filed in opposition to the petitions for arbitration because, it argues, the petitions for arbitration are a "pseudo-pleading" not recognized under the Alabama Rules of Civil Procedure, particularly given that the relief demanded in the petitions could be awarded only by an arbitrator. In its companion oppositions to the motions to compel arbitration, Unum argued that it was "procedurally inappropriate and nonsensical for Plaintiffs to seek [the Bullock Circuit] Court's jurisdiction by filing a pseudo-pleading and then simultaneously seek to have [the] Court to relinquish its jurisdiction to an arbitrator." Building on that contention, Unum argued that "[b]ecause the Plaintiffs in this matter have not filed a Complaint, the Court has no jurisdiction over the Plaintiffs' claims." Unum reiterates those contentions to this Court, essentially arguing that the petitions for arbitration were due to be dismissed because they are not countenanced by the Alabama Rules of Civil Procedure.
FAA § 3 provides:
 "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."
FAA § 4 provides:
 "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to *Page 1073 
comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."
Although the United States Supreme Court held in SouthlandCorp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1
(1984), that an arbitration clause enforceable in an action in federal court is equally enforceable in an action brought in a state court, the Court went on to explain that "we do not hold that §§ 3 and 4 of the [FAA] apply to proceedings in state courts." 465 U.S. at 16 n. 10, 104 S.Ct. 852. The FAA does not create any independent federal-question jurisdiction,465 U.S. at 15, n. 9, 104 S.Ct. 852, and "[i]n controversies involving incomplete diversity of citizenship, there is simply no access to federal court. . . ." 465 U.S. at 34, 104 S.Ct. 852 (Justice O'Connor dissenting). See also Allied-Bruce Terminix Cos. v.Dobson, 513 U.S. 265, 291, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (Justice Thomas dissenting). The United States Supreme Court reaffirmed in Volt Information Sciences, Inc. v. Board ofTrustees of Leland Stanford Junior University, 489 U.S. 468,476-477, n. 6, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), that it had not held that FAA §§ 3 and 4 are applicable in state courts.
In Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102, 106
(Ala. 1995), this Court observed that "Alabama has not developed rules of arbitration for dealing with pre-dispute agreements independent from the law that has developed in cases in which the Federal Arbitration Act applied," because of the previously applicable Alabama statutory and caselaw barriers to the enforcement of such agreements. The Court then explained:
 "Because the United States Supreme Court has expanded the applicability of the [FAA] to state courts and because our circuit courts will now face more issues concerning arbitration, we look to 9 U.S.C. §§ 3 and 4, as interpreted herein and to the extent they are applicable and consistent with otherwise-provided procedures applicable in this state, as providing information on how the federal courts would apply the Act.²
 "² Of course, references in §§ 3 and 4 to federal jurisdiction and procedures must be analogized to corresponding laws and rules of this State."
684 So.2d at 106.
The Court further observed: *Page 1074 
 "On their face, §§ 3 and 4 appear to provide separate procedures for distinct situations, one where an action has been brought in a court upon an issue arguably referable to arbitration and the other where a party seeking arbitration petitions a court for an order requiring the other party to submit to arbitration. In practice, however, it is common for parties to seek relief under both provisions: a party involved in litigation, ordinarily brought by a party with whom the moving party has an arbitration agreement, may move the court for an order compelling arbitration under § 4 and for a stay of proceedings pending arbitration under § 3. See, e.g., Volt Info. Sciences [v. Board of Trustees of Leland Stanford Junior Univ.], 489 U.S. [468] at 471 n. 2, 109 S.Ct. [1248] at 1251 n. 2 [103 L.Ed.2d 488] [(1989)]; Perry v. Thomas, 482 U.S. 483, 484-85, 107 S.Ct. 2520, 2522-23, 96 L.Ed.2d 426 (1987). The United States Supreme Court has recognized the interrelatedness of the provisions, see Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 215, 105 S.Ct. 1238, 1239, 84 L.Ed.2d 158 (1985) (stating that `The Act authorizes parties to an arbitration agreement to petition a federal district court for an order compelling arbitration of any issue referable to arbitration under the agreement,' and citing both § 3 and § 4); Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983) (describing §§ 3 and 4 as `parallel devices for enforcing an arbitration agreement')."
684 So.2d at 106.
Throughout the remainder of that opinion, this Court discussed the procedures an Alabama circuit court should follow with respect to a "motion" to compel arbitration or a motion for a stay of proceedings pending arbitration, in terms of the formats prescribed by FAA §§ 3 and 4. For instance, the Court instructed that when a circuit court is presented with a motion to compel arbitration, "[t]he court is to hold a hearing and determine whether there are genuine issues concerning the making or performance of an agreement to arbitrate, as a federal court would in proceeding under § 4." 684 So.2d at 108. The Court undertook no specific discussion of an Alabama procedural counterpart to an FAA § 4 "petition . . . for an order" compelling arbitration, apparently because there was already an underlying action pending, making FAA § 3 the applicable provision.
Although states may not frustrate the enforcement of arbitration agreements by imposing restrictions not generally applicable to any contract, a state's procedures may apply to the enforcement of an arbitration agreement so long as they do not undermine the goals and policies of the FAA. Volt, supra;Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681,116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). Accordingly, this Court is free to apply or to develop procedural rules for the enforcement of arbitration agreements so long as those rules do not undermine the goals and principles of the FAA. See Wells v. Chevy ChaseBank, F.S.B., 363 Md. 232, 768 A.2d 620 (2001), for a helpful survey of the pertinent pronouncements by the United States Supreme Court in this regard and the applications of those pronouncements by various state appellate courts. For example, this Court has recognized a declaratory-judgment action as an acceptable means for obtaining an order compelling arbitration:
 "The record indicates that Mutual Assurance resorted to the judicial process only after Dr. Wilson had rejected its request to submit their contract dispute to arbitration. Mutual Assurance was *Page 1075 
certainly following an acceptable procedure when it filed its declaratory judgment action, the primary purpose of which was to compel Dr. Wilson to arbitrate. See Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102 (Ala. 1995) (on remand from the United States Supreme Court) (noting that the procedure set out in § 4 of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (`FAA'), for seeking a court order compelling arbitration is applicable in state courts). The mere act of filing a declaratory judgment action for the purpose of determining the issue of arbitrability does not, as a matter of law, constitute a waiver of one's right to arbitrate."
Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160, 1164-65 (Ala. 1998).
Both Coleman and the plaintiffs in the Wright case have filed motions to compel arbitration. That is an acceptable, although arguably mislabeled, procedural device for procuring a court order compelling arbitration under the interrelated application of the scheme envisioned by FAA §§ 3 and 4, in a situation where there is no "suit or proceeding" pending. As noted, the nomenclatures applicable to filings paralleling those contemplated by § 3 and § 4 would be a motion to compel arbitration, when filed in connection with a pending action, and a "petition" for an order to compel arbitration, if no action is pending. However, as this Court also explained Dobson:
 "Thus, the nature of a court's inquiry in determining whether `the issue involved in [a] suit or proceeding is referable to arbitration under such an agreement' pursuant to § 3 is essentially the same as the nature of a court's inquiry in determining whether `the making of the arbitration agreement or the failure, neglect, or refusal to perform the same' is `in issue' pursuant to § 4. Whether an issue is referable to arbitration `under such an agreement' and whether a party is in default of an arbitration agreement because of `the failure, neglect, or refusal to perform the same' are questions that necessarily require analysis of the claims asserted and of the language of the arbitration agreement involved."
684 So.2d at 106-07.
Furthermore, "[w]e treat a pleading and any other filing according to its substance, rather than its form or style." Exparte Bender Shipbuilding Repair Co., 879 So.2d 577, 584 (Ala. 2003).
The filing of the so-called petition for arbitration in these cases simply served to inform the Bullock Circuit Court of the nature of the dispute and controversy proposed to be submitted to an arbitrator. All things considered, we do not find the action of the Bullock Circuit Court in declining to dismiss the arguably superfluous petitions for arbitration to be reversible error in the context of the overall proceedings in these cases.
 Venue
The plaintiffs in the Wright case and Coleman have filed identical "responses" to Unum's mandamus petitions and argue in those responses two rationales for rejecting Unum's contentions that venue in Bullock County is improper. First, they say, the positions Unum took in the Sumter County litigation were such that the doctrine of judicial estoppel precludes Unum from taking contrary positions in the cases pending in Bullock County. Second, they argue that under the plaintiff joinder provisions of § 6-3-7(c), Ala. Code 1975, venue is proper in Bullock County in any event. Howard and Niel, in their "answer" to Unum's petition in the Wright case make those same two arguments, but they also argue, citing Ex parte Allen, 798 So.2d 668 (Ala. 2001), that "[w]here the FAA applies, as it does here, it is procedurally *Page 1076 
proper for a trial court to rule on arbitrability prior to ruling on venue since an affirmative decision on arbitrability renders all venue issues moot." Turning first to this last argument, because, if valid, it would obviate consideration of the other two arguments, we analyze the holdings of Ex parte Allen.
A. Ex parte Allen
In Ex parte Allen, three defendants to an action arising out of a contract dispute moved for a change of venue. After that motion was denied, two of the defendants moved to compel arbitration of the dispute; that motion was also denied. Those two defendants then petitioned this Court for a writ of mandamus directing the trial court to vacate its order denying their motion for a change of venue and separately appealed from the order denying their motion to compel arbitration. QuotingThompson v. Skipper Real Estate Co., 729 So.2d 287, 292 (Ala. 1999), this Court declared "`[a] defendant has the right to have the proper venue established before it has any obligation to move to compel arbitration.'" Allen, 798 So.2d at 673 (emphasis added in Allen). The Court observed that "if Thompson stands for anything, it stands for the proposition that [the two defendants] had a right to seek a judicial determination that [the proposed transferee court] was the proper forum in which to resolve the arbitration issue." 798 So.2d at 675. Having determined, however, that those defendants had in fact established their right to compel arbitration and that the trial court's order denying them that right was therefore due to be reversed in the appeal, the Court concluded that their petition for the writ of mandamus was rendered moot. This was an appropriate disposition under the circumstances of that case, given that the only relief the defendants would have sought from a transferee court would have been the relief they were being given by the ruling in their appeal: compelled arbitration. This Court did not "recognize" in Allen, as Howard and Niel argue in their answer, that "it is more efficient and reasonable for a court to decide issues of arbitrability prior to venue." In the present cases, the party seeking a change of venue (Unum) and the parties seeking to compel arbitration (the plaintiffs and Howard and Niel) are not the same, and affirming the orders compelling arbitration would not obviate Unum's threshold right to a proper venue.
B. Judicial Estoppel
Does Unum's conduct in the Sumter County litigation judicially estop it from challenging venue in Bullock County? In Ex parteFirst Alabama Bank, 883 So.2d 1236, 1244-45 (Ala. 2003), this Court stated:
 "The United States Supreme Court in New Hampshire v. Maine, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968
(2001), recently observed that `"[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle"' and then identified several factors as informative in determining the applicability of the doctrine of judicial estoppel. 532 U.S. at 750-51, 121 S.Ct. 1808 [149 L.Ed.2d 968] (quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982)). The Court held that for judicial estoppel to apply (1) `a party's later position must be "clearly inconsistent" with its earlier position'; (2) the party must have been successful in the prior proceeding so that `judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or second court was misled"' (quoting Edwards v. Aetna Life Ins. Co., *Page 1077 690 F.2d 595, 599 (6th Cir. 1982)); and (3) the party seeking to assert an inconsistent position must `derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.' 532 U.S. at 750-51, 121 S.Ct. 1808 [149 L.Ed.2d 968]. No requirement of a showing of privity or reliance appears in the foregoing statement of factors to consider in determining the applicability of the doctrine of judicial estoppel."
883 So.2d at 1244-45.
We then declared: "We today embrace the factors set forth inNew Hampshire v. Maine and join the mainstream of jurisprudence in dealing with the doctrine of judicial estoppel."883 So.2d at 1246. See also General Motors Corp. v. Stokes Chevrolet, Inc.,885 So.2d 119 (Ala. 2003).
Did Unum successfully take in the Sumter County litigation a position that was clearly inconsistent with the position regarding venue it later took in the Bullock County proceedings? Although Unum did not initially challenge venue in Sumter County as to those plaintiffs who were non-residents, it did eventually protest venue in that county as to nonresident plaintiffs after their numbers and proportions increased. Howard and Niel argue that by that delay Unum waived its right to argue improper venue. Whether a waiver of the right to object to venue occurred as to some of the plaintiffs in the Sumter County litigation would have been an issue for Judge Hardaway to decide upon proper presentation. As it was, no claim of waiver was raised before him, and his final consolidated order granted Unum's motion to dismiss on the basis of improper venue as to the 206 plaintiffs now included in the Wright case. Furthermore, as noted, those same plaintiffs subsequently, if redundantly, dismissed their actions in Sumter County before refiling them in the Wright
case. Unum then again, consistent with the position it had been allowed to assert by Judge Hardaway, challenged venue in Bullock County as improper under § 6-3-7. We fail to perceive how its course of conduct in the Sumter County cases judicially estops it from challenging venue in Bullock County as to the 206 former plaintiffs in the Sumter County litigation, who, after being twice dismissed from that litigation, selected an entirely new venue. Likewise, we fail to perceive a basis for estoppel as to the completely different contingent of plaintiffs, including Coleman, who chose to file their actions in Bullock County as their first and only venue. Whatever inconsistency of position Unum might have taken regarding the arbitrability of the claims of the various plaintiffs would have been an issue for Judge Hardaway, or another circuit judge proceeding in a proper venue, to address in the first instance. Unum is not judicially estopped from insisting on proper venue for wherever the former plaintiffs in the Sumter County litigation and the additional "first time" plaintiffs chose to file their actions seeking enforcement of their contractual rights to arbitration.
The only venue statute the parties cited to Judge Smithart and the only one they discuss in their brief to this Court is § 6-3-7, Code of Ala. 1975. Substantially revised in 1999, that section now reads, in pertinent part:
 "(a) All civil actions against corporations may be brought in any of the following counties:
 "(1) In the county in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of real property that is the subject of the action is situated; or
 "(2) In the county of the corporation's principal office in this state; or *Page 1078 
 "(3) In the county in which the plaintiff resided, or if the plaintiff is an entity other than an individual, where the plaintiff had its principal office in this state, at the time of the accrual of the cause of action, if such corporation does business by agent in the county of the plaintiff's residence; or
 "(4) If subdivisions (1), (2), or (3) do not apply, in any county in which the corporation was doing business by agent at the time of the accrual of the cause of action.
". . . .
 "(c) Anything to the contrary in Rule 82(c) of the Alabama Rules of Civil Procedure notwithstanding, in any action against a corporation, venue must be proper as to each and every named plaintiff joined in the action, unless the plaintiffs shall establish that they assert any right to relief jointly, severally, or arising out of the same transaction or occurrence and that the existence of a substantial number of questions of law or material fact common to all those persons not only will arise in the action, but also: (1) that such questions will predominate over individualized questions pertaining to each plaintiff; (2) [that] the action can be maintained more efficiently and economically for all parties than if prosecuted separately; and (3) that the interest of justice supports the joinder of the parties as plaintiffs in one action. If venue is improper for any plaintiff joined in the action, then the claim of any such plaintiff shall be severed and transferred to a court where venue is proper. In the event severance and transfer is mandated and venue is appropriate in more than one court, a defendant sued alone or multiple defendants, by unanimous agreement, shall have the right to select such other court to which the action shall be transferred and, where there are multiple defendants who are unable to agree upon a transferee court, the court in which the action was originally filed may transfer the action to any such other court. Transfer of the action and notice thereof shall be in accord with Section 6-3-22."
Subsection (a)(2) is inapplicable here because Unum, a Delaware corporation with its principal place of business in Portland, Maine, does not have a "principal office" in Alabama. Accordingly, the parties are in agreement that venue of the plaintiffs' claims is governed by subsections (a)(1) and (a)(3), subject to the "joinder" provisions of subsection (c). The plaintiffs in the Wright case concede that venue is directly proper in Bullock County, under (a)(1) or (a)(3) only as to two of their number. Venue manifestly is improper in Bullock County for Coleman's filings, because Coleman alleged in her petition for arbitration that she is a resident of Conecuh County and that defendant Womack "is believed to be a resident citizen of Houston County," and because she made no allegation that any aspect of the alleged fraud occurred in Bullock County. Coleman acknowledges in her response to Unum's petition for a writ of mandamus that "[i]f there were no legal doctrine of judicial estoppel and no statutory law (section 6-3-7(c), Code ofAlabama, 1975) to the contrary, then Petitioner Unum's attempts to litigate the issue of arbitration in numerous other Circuit Courts (subsequent to a Court ruling based upon Petitioner Unum's previously pleaded position to the contrary) would be allowed under Alabama stare decisis." Because, as explained, the doctrine of judicial estoppel does not apply to prevent Unum from insisting on proper venue for Coleman's court action and because § 6-3-7(c) applies only where there is more than one plaintiff, Unum has shown that it is entitled *Page 1079 
to the writ of mandamus directing Judge Smithart to vacate his order denying Unum's motion for a change of venue in Coleman.
There being over 400 plaintiffs in the Wright case, but only two as to whom venue in Bullock County is directly proper, we must consider the effect of § 6-3-7(c) in that case. If the criteria specified in § 6-3-7(c) are met for the remaining plaintiffs, then venue in Bullock County becomes derivatively proper for them. Ex parte Pratt, 815 So.2d 532 (Ala. 2001).
 "`A petition for the writ of mandamus is the proper procedure for challenging a trial court's refusal to transfer an action based on improper venue. Ex parte Alabama Power Co., 640 So.2d 921, 922 (Ala. 1994). A writ of mandamus is appropriate when the petitioner makes a clear showing of error on the part of the trial court. Id.'
 "Ex parte Children's Hosp. of Alabama, 721 So.2d 184, 186 (Ala. 1998). The standard for determining whether a writ of mandamus will issue is as follows:
 "`A writ of mandamus is an extraordinary remedy, and it will be "issued only when there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala. 1993). A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal. Ex parte Drill Parts Serv. Co., 590 So.2d 252 (Ala. 1991).'
 "Ex parte Empire Fire Marine Ins. Co., 720 So.2d 893, 894 (Ala. 1998). `This Court reviews mandamus petitions seeking review of a venue determination by asking whether the trial court exceeded its discretion in granting or denying the motion for a change of venue.' Ex parte Perfection Siding, Inc., 882 So.2d 307, 310 (Ala. 2003) (citing Ex parte Scott Bridge Co., 834 So.2d 79, 81 (Ala. 2002))."
Ex parte Sawyer, 892 So.2d 898, 901 (Ala. 2004).
Section 6-3-7(c) permits joinder of plaintiffs as to whom venue might not be proper if, first, "they assert any right to relief jointly, severally, or arising out of the same transaction or occurrence." As noted, the plaintiffs in the Wright case instituted their action to obtain a court order compelling Unum to arbitrate in accord with the arbitration agreement allegedly contained in each of their policies of insurance.
The right to that specific relief (along with the incidental relief of the selection of an arbitrator by the court if the parties could not mutually agree upon one) was the only right to relief asserted. Thus, it is that "right to relief" to which the criteria of § 6-3-7(c) must be applied. The context and positioning of the words "jointly" and "severally" in the phrase found in § 6-3-7(c) — "they assert any right to relief jointly, severally, or arising out of the same transaction or occurrence" — clearly indicate that those words are implicitly separated by the coordinating conjunction "or." Therefore, this aspect of the § 6-3-7(c) criteria is satisfied if the plaintiffs in theWright case assert the right to the relief of arbitration, under identical arbitration provisions in identically framed policies of insurance, either "jointly" or "severally." Black'sLaw Dictionary (8th ed. 2004) defines "severally" as follows: "adj. Distinctly; separately severally liable." The AmericanHeritage *Page 1080 Dictionary of the English Language (4th ed. 2000) includes within its definitions of the term the following: "Single; distinct . . . Respectively different; various: They parted and went their several ways." The plaintiffs in the Wright case clearly assert "severally" the right to compulsory arbitration, each relying on the same arbitration agreement contained in identically framed Unum insurance policies. Did Judge Smithart exceed his discretion in applying to this severally asserted right to relief the remainder of the § 6-3-7(c) criteria? In other words, can it be reasonably concluded that
 "the existence of a substantial number of questions of law or material fact common to all those persons not only will arise in the action, but also: (1) that such questions will predominate over individualized questions pertaining to each plaintiff; (2) [that] the action can be maintained more efficiently and economically for all parties than if prosecuted separately; and (3) that the interest of justice supports the joinder of the parties as plaintiffs in one action"?
§ 6-3-7(c), Ala. Code 1975 (emphasis supplied). In applying these criteria, we must remember that their proper focus is the "right to relief" being asserted in the motion to compel arbitration, i.e., the right under FAA § 4 for "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition [a state court] . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." The focus is not the claim of fraud each plaintiff proposes subsequently to assert before the arbitrator, as those claims are previewed by the plaintiffs in their petition for arbitration. It will be for an arbitrator to decide if those claims will be "consolidated" in some or all respects or if they will be considered strictly on an individual basis. See Birmingham News Co. v. Horn, [Ms. 1020552, June 11, 2004] ___ So.2d ___ (Ala. 2004). As to the asserted right to relief of compelled arbitration, it is readily apparent that the answer to the threshold "mixed" questions of law and material fact, established by the relevant caselaw will be determinative:
 "Initially, the party seeking to compel arbitration must prove 1) the existence of a contract calling for arbitration, and 2) that the contract `is "a contract evidencing a transaction involving commerce" within the meaning of the Federal Arbitration Act (FAA).' Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 53, 123 S.Ct. 2037, 2038, 156 L.Ed.2d 46 (2003) (quoting 9 U.S.C. § 2). `[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995)."
Hudson v. Outlet Rental Car Sales, Inc., 876 So.2d 455, 457
(Ala. 2003) (emphasis omitted).
We cannot say that Judge Smithart exceeded his discretion in concluding in the Wright case, as he implicitly did in denying Unum's challenge to venue, that those questions of law and fact would predominate over any individualized questions. Similarly, we cannot say that he exceeded his discretion in determining that a simultaneous consideration of all of the essentially identical asserted rights to compel arbitration could be maintained more efficiently and economically than if prosecuted separately, and that the interest of justice supported the joinder in one proceeding of all plaintiffs asserting the right. The only other option available to him, as the parties agree, would be severance and transfer *Page 1081 
of the cases asserting the rights to compel arbitration to approximately 26 different Alabama circuit court venues. Having considered all of the criteria prescribed by § 6-3-7(c) in light of the record before the Judge Smithart, we do not find that he exceeded his discretion in denying the motion for severance and in refusing to transfer to other venues the cases of the plaintiffs for whom venue in Bullock County was not directly proper.
 Existence and Scope of Arbitration Agreement
Unum argues on appeal in the Wright case (case no. 1022043) that "[t]he party seeking to compel arbitration has the burden of establishing that the scope of arbitration agreement is broad enough to encompass the Plaintiffs' claims," but that the plaintiffs in that case failed to establish "that the scope of the arbitration provision is broad enough to encompass Plaintiffs' claims, much less presented any evidence establishing the existence of an arbitrable claim." Similarly, Unum asserts that the plaintiffs failed to present sufficient evidence to establish the existence of a written contract calling for arbitration. Representative recent discussions by this Court of the relative burdens of production in that regard are as follows:
 "A trial court's duty in ruling on a motion to compel arbitration is analogous to its duty in ruling on a motion for a summary judgment. Ex parte Greenstreet, Inc., 806 So.2d 1203, 1207 (Ala. 2001). The party seeking to compel arbitration has the burden of producing evidence to establish a prima facie showing that an agreement to arbitrate exists in a `contract evidencing a transaction involving commerce.' 9 U.S.C. § 2; see also Ex parte Greenstreet, 806 So.2d at 1209. Once the moving party makes that showing, the burden of persuasion shifts to the nonmovant to present `substantial evidence' of some defense to arbitration. Ex parte Greenstreet, 806 So.2d at 1209."
Ex parte Horton Family Housing, Inc., 882 So.2d 838, 841 (Ala. 2003).
 "A party seeking to compel arbitration has the burden of proving: (1) the existence of a contract containing an arbitration agreement and (2) that the underlying contract evidences a transaction affecting interstate commerce. Kenworth of Birmingham, Inc. v. Langley, 828 So.2d 288, 290 (Ala. 2002). Once the party seeking to compel arbitration has made a prima facie showing as to those two items, the burden shifts to the party opposing arbitration to present evidence indicating either that the arbitration agreement is invalid or that it is inapplicable to the dispute in question. Id."
Massey Auto., Inc. v. Norris, 895 So.2d 215, 218 (Ala. 2004)
 "Our caselaw has analogized the practice on motions to compel arbitration to motions for summary judgment. In Southern Energy Homes, Inc. v. Harcus, 754 So.2d 622, 625-26 (Ala. 1999), Justice See wrote:
 "`This Court reviews de novo a trial court's denial of a motion to compel arbitration. See Crimson Industries, Inc. [v. Kirkland], 736 So.2d [597,] 600 [(Ala. 1999)]; Patrick Home Center, Inc. v. Karr, 730 So.2d 1171, 1171 (Ala. 1999). This Court has stated that a trial court's duty in ruling on a motion to compel arbitration is analogous to its duty in ruling on a motion for summary judgment and that the trial court is to hold a hearing and determine whether there are genuine issues of material fact concerning the making of, or performance of, an arbitration agreement. See Allied-Bruce Terminix Companies, Inc. v. Dobson, *Page 1082 684 So.2d 102, 108 (Ala. 1995). "`[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.'" Ryan's Family Steak Houses, Inc. v. Regelin, 735 So.2d 454, 457 (Ala. 1999) (quoting Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995)) (alteration in Regelin).'"
Premiere Auto. Group, Inc. v. Welch, 794 So.2d 1078, 1081 (Ala. 2001).
As previously discussed, 206 of the plaintiffs in the Wright
case were originally plaintiffs in the Sumter County litigation. Judge Hardaway's April 25, 2003, order specifically granted "[a]ll pending Motions to Compel Arbitration" as to each of those plaintiffs, identified by name on Exhibit A attached to his order, along with the other group of plaintiffs identified by name on Exhibit B to the order. Richard W. Bell was designated to serve as arbitrator but, as noted earlier, he thus far has declined to undertake that assignment as to the 206 dismissed plaintiffs. Unum argues that Judge Hardaway's order is "ambiguous" in ordering the 206 plaintiffs to arbitration, because he also granted Unum's motion to dismiss those plaintiffs "without prejudice" on the basis of improper venue. Had an appeal been taken from that order raising the issue whether the order should have stayed the case as to the 206 plaintiffs rather than dismissing them from the case, it would probably have been well-taken. See Porter v. Colonial Life Accident Ins. Co.,828 So.2d 907 (Ala. 2002) (but see special concurrence of Justice Houston). In the absence of an appeal raising that issue, dismissal of a civil action after the claims asserted in it have been referred to arbitration does not impair the validity of the aspect of the order compelling arbitration. Porter,828 So.2d at 908; Potts v. Baptist Health Sys., Inc., 853 So.2d 194, 196
n. 4 (Ala. 2002). See also Lewis v. Oakley, 847 So.2d 307, 330
(Ala. 2002).
Although Unum filed a motion seeking clarification of Judge Hardaway's order, it abandoned that motion after the 206 plaintiffs, somewhat redundantly, voluntarily dismissed their civil actions in Sumter County. Unum now argues that this "second" dismissal mooted its motion for clarification. We cannot agree, to the extent Judge Smithart was entitled to accord Judge Hardaway's order, duly before him, force and effect. There is nothing ambiguous, as opposed to perhaps inconsistent, about Judge Hardaway's order granting the motions to compel arbitration for the 206 individually named plaintiffs listed on Exhibit A referenced in, and attached to, the order. Although more properly recognized as an application of the doctrine of "collateral estoppel" rather than "judicial estoppel," the issue was properly before Judge Smithart for consideration. "This Court may affirm a trial court's judgment on `any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court.' Liberty Nat'l LifeIns. Co. v. University of Alabama Health Servs. Found., P.C.881 So.2d 1013, 1020 (Ala. 2003) (citing Ex parte Ryals,773 So.2d 1011 (Ala. 2000) . . .)." General Motors Corp. v. StokesChevrolet, Inc., 885 So.2d 119, 124 (Ala. 2003).
For the doctrine of collateral estoppel, or issue preclusion, to apply, the following elements are required: "(1) [T]hat an issue in a prior action was identical to the issue litigated in the present action; (2)that the issue was actually litigated in the prior action; (3) that resolution of the issue was necessary to the prior *Page 1083 
judgment; and (4) that the same parties are involved in the two actions." Smith v. Union Bank Trust Co., 653 So.2d 933, 934
(Ala. 1995). "Where these elements are present, the parties are barred from relitigating issues actually litigated in a prior suit." Lott v. Toomey, 477 So.2d 316, 319 (Ala. 1985). See alsoBiles v. Sullivan, 793 So.2d 708 (Ala. 2000). It is undisputed that the underlying claims the 206 former Sumter County plaintiffs now seek to have Unum compelled to arbitrate in theWright case are the same claims ordered to arbitration by Judge Hardaway's order. Therefore, Judge Smithart was entitled to accord that order full effect and to accept it as establishing, and precluding further litigation contesting, the existence of a contract between Unum and the 206 plaintiffs containing an arbitration agreement covering the plaintiffs' claims against Unum. Judge Smithart did not err in granting the motion to compel arbitration of the claims of those 206 plaintiffs. Three hundred and forty-nine of the plaintiffs in the Wright case filed identical affidavits, except for the name of the affiant, attesting:
 "[T]o the best of my knowledge, attached hereto as Exhibit `A,' is a true and complete copy of the arbitration agreement between myself and Unum Life Insurance Company of America. Said arbitration agreement is part of my insurance policy/contract issued by Unum Life Insurance Company of America. The foregoing is true and accurate to the best of my knowledge."
None of the parties to this appeal explain whether any of those affiants were also plaintiffs in the original Sumter County action. Although we could probably make that determination by cross-matching the names of the 206 Sumter County plaintiffs against the 349 affiants, we decline to do the parties' work in that regard. Unum asserts in its brief that, at the time Judge Smithart ruled, "there still remained dozens of Plaintiff who had failed to demonstrate in any way the existence of a written arbitration agreement," but that statement does not attempt to take into account the status of the 206 former Sumter County plaintiffs.
In addition to those affidavits, Judge Smithart had before him the following information from which to determine whether the plaintiffs had made "a prima facie showing" under their burden of production:
 (1) A copy of Unum's motion to compel arbitration and stay proceedings filed in the first action filed in Sumter County, addressing fraud claims essentially identical to those later asserted by the plaintiffs in the Wright case, involving the same arbitration agreement and containing Unum's assertion that "[t]he essence of Plaintiff's claims against Unum is that the benefits provided under the policy were not as represented. Accordingly, Plaintiff's claims fall within the scope of the arbitration provision quoted above." Unum further stated in that motion that "[b]y its terms, the arbitration agreement entered into by the Plaintiff requires the arbitration of Plaintiff's claims against Unum in this action because the Plaintiff's state law tort claims `arise out of' and/or `related' to the Summary of Benefits in which Plaintiff voluntarily enrolled."
 (2) The motions to compel arbitration Howard and Niel filed in the Wright case, asserting that the certificates of insurance issued to the plaintiffs in that case contained an arbitration agreement, a copy of which was attached to the motion as representing "the arbitration agreement between all of the parties."
 (3) In its "Opposition to Plaintiffs' Motion to Compel Arbitration" in the Wright case, Unum made the following *Page 1084 
statements: "The arbitration provisions of the policy at issue in this case (attached as Exhibit `A' to Plaintiffs' Motion to Compel Arbitration) provide that arbitration under the policy shall be conducted in accordance with the policy's arbitration provisions or, when necessary, in accordance with the Rules of the American Arbitration Association (the `AAA')"; and "[t]he relevant arbitration provision provides: `All disputes, claims, and disagreements of any kind or nature that arise out of, or are related in anyway to the summary of benefits are subject to arbitration, unless a mutually agreed upon settlement can be reached.'" Unum also stated in that opposition, however, that the plaintiffs had failed "to provide any written Arbitration Agreements executed by the Plaintiffs" and had "further failed to demonstrate in any way that they were, in fact, covered under a policy of insurance that contained the arbitration provision attached to the Plaintiffs' Motion to Compel Arbitration."
 (4) At the hearing, counsel for the plaintiffs in the Wright case asserted that there existed in that case "an insurance policy that contains an arbitration agreement. It is attached as Exhibit C to the Plaintiffs' Response to Unum's Supplemental Brief in Opposition to the Plaintiffs' Motion to Compel Arbitration." The arbitration agreement attached as Exhibit C to that response is identical to the agreement submitted by Howard and Niel.
 (5) Counsel for Unum made no challenge or other response at the hearing to that statement by counsel for the plaintiffs. Rather, counsel for Unum focused almost exclusively on the venue issue. Concerning the scope of the arbitration agreement, counsel for Unum explained that at the time Unum moved to compel arbitration in the Sumter County cases, it believed "that the arbitration provision in the contract applied to those cases," but that as the number of nonresident plaintiffs begin to mount, the decision to contest venue was made. Counsel for Unum then stated that there was an additional matter that he had not yet discussed with counsel for the plaintiff:
 "It is our belief, after looking further at this arbitration provision and at the areas that they are alleging, this arbitration provision does not apply. And I'll go to Sumter County and tell Judge Hardaway that if I need to. We did ask initially that arbitration apply because we thought that it should. But this arbitration provision clearly applies to claims' litigation. This is fraud litigation. But that's another issue. That's not what I'm here to argue."
 When, at the conclusion of the hearing, counsel for the plaintiffs asserted that the arbitration agreement at issue in the cases before Judge Smithart was the same arbitration agreement as had been involved in the Sumter County litigation, counsel for Unum responded, "[I]t's the same arbitration agreement but it applies to a different group of people." Unum never presented any argument or made any comment otherwise at the hearing to the effect that Unum was contending that there was not a policy of insurance in existence containing the arbitration agreement as presented to the court.
 (6) In its motion to consolidate and arbitrate filed with respect to the first nine Sumter County cases, Unum asserted that "all of the plaintiffs in these cases executed identical arbitration agreements" and that all parties agreed "that the plaintiffs['] claims are due to be arbitrated." In a footnote, Unum *Page 1085 
explained its understanding that additional plaintiffs "have recently or will soon file" identical complaints and that "[a]ll additional Plaintiffs executed arbitration agreements identical to arbitration agreements executed by Plaintiffs identified herein." Unum stated that the parties would notify Judge Hardaway when those additional cases had been filed "so they can be consolidated and arbitrated with the cases listed herein."
We conclude that the combined effect of this body of information before Judge Smithart was sufficient to constitute "a prima facie showing" of the existence of a contract containing an arbitration agreement. Unum does not raise on appeal any issues concerning the plaintiffs' burden of establishing that the contract evidenced a transaction affecting interstate commerce. With respect to the statement by Unum in its opposition that the plaintiffs had failed to provide any written arbitration agreement "executed by the Plaintiffs," which contention was not mentioned during the hearing before Judge Smithart, it suffices to note that "[c]onduct of one party to a contract from which the other may reasonably draw an inference of assent to an agreement is effective as an acceptance." Merrill Lynch, Pierce, Fenner Smith, Inc. v. Kilgore, 751 So.2d 8, 11 (Ala. 1999). The petition for arbitration advised that the plaintiffs in theWright case had purchased the disability policies, that they had authorized their respective boards of education to withdraw the necessary premium payments from their paychecks, and that premium payments were thereafter in fact deducted.
Although Unum also asserted in its opposition that the plaintiffs had "failed to demonstrate that the scope of the Arbitration Agreement is broad enough to encompass Plaintiffs' claims against Unum," relying on the fact that the arbitration agreement provided that it covered "[a]ll disputes, claims, and disagreements of any kind or nature that arise out of, or are related in any way to the summary of benefits" and arguing that the "Plaintiffs' claims relate not to the determinations under the `Summary of Benefits,' but to an alleged misrepresentation regarding the scope of the policy's coverage," this contention was not developed at the hearing. Rather, as noted, counsel for Unum advised Judge Smithart that Unum's position concerning the scope of coverage was "another issue" and one Unum was not "here to argue." The hearing had been convened to consider all of the motions, however, including the motions to compel arbitration; it was not a hearing limited to the issue of venue, although that was necessarily a threshold issue. In the end, Judge Smithart expressly found that "the arbitration agreement is broad enough to encompass the Plaintiffs' claims in this case."
 "`The federal policy favoring arbitration is so strong that, as a matter of law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . ."' Ameriquest Mortgage Co. v. Bentley, 851 So.2d 458, 463 (Ala. 2002) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983))."
Parkway Dodge, Inc. v. Hawkins, 854 So.2d 1129, 1132-33 (Ala. 2003). As noted, the arbitration agreement covers all disputes, claims, and disagreements of any kind or nature that "arise out of, or are related in anyway to the summary of benefits." Unum argues in its brief:
 "The summary of benefits relates entirely to policies and procedures related to the adjudication of claims for disability benefits. The Plaintiffs in this case allege, *Page 1086 
generally, fraud in the sale of the Unum group disability insurance coverage. Plaintiffs make no allegations whatsoever related to Unum's claims handling or any benefit decision made by Unum."
Although Unum thus characterizes the nature of the "Summary of Benefits," it acknowledges in its brief to this Court that "the Summary of Benefits itself is not a part of the record in this case." The term "arising out of or relating to" has a broad application, and, on the record before us, we cannot say that the plaintiffs' claim of misrepresentation falls outside the ambit of the arbitration clause. See Health Ins. Corp. of Alabama v.Smith, 869 So.2d 1100, 1109 (Ala. 2003).
In light of all that we have discussed above, we affirm that portion of Judge Smithart's order granting the motion of the plaintiffs in the Wright case to compel arbitration.
 Deadlines Imposed by Judge Smithart
After granting the motion to compel arbitration, Judge Smithart continued in his order:
 "Finally, the arbitration agreement submitted by the Plaintiffs provides that the parties shall agree on an arbitrator. Given the lengthy history of the parties and this case, along with its predecessor cases, the Court believes that a deadline would be appropriate for both the selection of the arbitrator and, pursuant to the contract, completion of the arbitration. It is thereby ORDERED, ADJUDGED, AND DECREED that the parties shall agree on an arbitrator within fifteen (15) days of the date of this Order. In the event the parties have not agreed on an arbitrator within fifteen (15) days as set forth above, the Court will appoint an arbitrator pursuant to 9 U.S.C. § 12.
 "Pursuant to the terms of the arbitration agreement, the parties shall have ninety (90) days to complete the arbitration from the date of this Order."
In its brief, Unum states that "[t]he arbitration provision at issue in this case" is attached as an exhibit to the plaintiffs' motion to compel arbitration and provides, in pertinent part, as follows:
 "All arbitration under the summary of benefits is governed by 9 United Stated Code § 1 through 16 (the Federal Arbitration Act).
 "The arbitration provisions are conducted according to the provisions of the summary of benefits. If the summary of benefits does not provide information necessary to proceed, the arbitration will be conducted according to the dispute resolution procedures for insurance claims of the American Arbitration Association, unless you and Unum mutually agree, in writing, otherwise.
". . . .
 "The arbitration provisions will begin within 90 days from the date on which either you or Unum receives notice that the other would like to arbitrate a dispute unless you and Unum agree in writing to extend the time."
Unum states in its brief that "the contract provides that the arbitration will be conducted according to the AAA's [American Arbitration Association's] dispute resolution procedures for insurance claims. These procedures have been discontinued, however. Pursuant to the AAA, the rules now applicable would be the commercial arbitration rules." The plaintiffs in the Wright
case state in their brief to this Court that Unum is correct in pointing out that the American Arbitration Association's dispute-resolution procedures for insurance claims have been "discontinued and are no longer in effect"; they disagree, however, with Unum's contention *Page 1087 
that the commercial arbitration rules of the American Arbitration Association would now apply. The arbitration agreement itself does not provide for the eventuality of the discontinuance of the dispute-resolution procedures for insurance claims, and nowhere in the record or in the briefs of any of the parties are any of the rules of the American Arbitration Association quoted or otherwise referenced.
 "A trial court is vested with the authority `"to manage its affairs in order to achieve the orderly and expeditious disposition of cases."' Mangiafico v. Street, 767 So.2d 1103, 1105 (Ala. 2000) (quoting Iverson v. Xpert Tune, Inc., 553 So.2d 82, 87 (Ala. 1989)). However, a trial court may not enter orders compelling parties to act in a manner that is inconsistent with the parties' own arbitration agreement.
 "`When a trial court compels arbitration, it must do so in a manner consistent with the terms of the arbitration provision. See Ex parte Cappaert Manufactured Homes, 822 So.2d 385, 387 (Ala. 2001), ("[section] 5 [of the Federal Arbitration Act] mandates that the method set forth in the arbitration agreement be followed"); Southern Energy Homes Retail Corp. v. McCool, 814 So.2d 845
(Ala. 2001) (trial court directed to vacate its order because it failed to compel arbitration in a manner consistent with the terms of the agreement between the parties); Ex parte Dan Tucker Auto Sales, [Inc., 718 So.2d 33 (Ala. 1998)] (trial court erred in assigning administrative fees of arbitration to the defendant when the Rules of the [American Arbitration Association] provided for the relief of a party in the event of a hardship).'
 "BankAmerica Hous. Servs. v. Lee, 833 So.2d 609, 618 (Ala. 2002). Furthermore, a trial court may not mandate `mechanisms and procedures inconsistent with the mechanisms and procedures set out in the [Commercial Arbitration] Rules [of the American Arbitration Association].' 833 So.2d at 618."
Northcom, Ltd. v. James, 848 So.2d 242, 245 (Ala. 2002). InBankAmerica Housing Services, Division of Bank of America, FSBv. Lee, 833 So.2d 609 (Ala. 2002), the parties' arbitration agreement provided that the Commercial Rules of the American Arbitration Association ("the Rules") would apply. The trial court's order compelling arbitration directed that the arbitrator be selected within a specified time and that the arbitration take place within a specified time.
 "We conclude that when the trial court ordered the parties to arbitrate their claims, certain of the terms it imposed, instead of simply managing the litigation, . . . materially affected the arbitration process itself in ways contrary to the procedures expressly prescribed by the Rules. The trial court's orders compelling arbitration, in conflict with the Rules, (1) required each respective arbitration to be completed within a set time frame; [and] (2) stated a deadline for selecting an arbitrator, in default of which the trail judge would select the arbitrator. . . . As to these aspects of an arbitration, the Rules prescribe specific mechanisms and procedures with which the trial court's special provisions are at variance. Thus, we conclude that the trial court erred when it mandated mechanisms and procedures inconsistent with the mechanisms and procedures set out in the Rules."
833 So.2d at 618.
The arbitration agreement, as presented by the record, provides that the proceedings would "begin within ninety (90) days *Page 1088 
from the date" on which notice to arbitrate was given to Unum and would be
 "conducted according to the provisions of the Summary of Benefits. If the Summary of Benefits does not provide information necessary to proceed, the arbitration will be conducted according to the dispute resolution procedures for insurance claims of the American Arbitration Association, unless you and Unum mutually agree, in writing, otherwise."
As noted, however, there is no copy of the Summary of Benefits in the record and there is no copy of any rules of the American Arbitration Association, commercial or otherwise, in the record. We do not know what procedures the American Arbitration Association prescribes in lieu of the now discontinued dispute-resolution procedures for insurance claims. We have no way of knowing whether, as Unum contends, the Rules should be substituted for those discontinued procedures or what provisions will fill the void. Therefore, at this stage of the proceedings, we are unable to review on the merits the contention that the deadlines imposed by the trial judge are contrary to the procedures prescribed by applicable provisions of the parties' arbitration agreement. We simply have no way of knowing from the record the content of that agreement in its ultimate form. Consequently, we cannot at this point reject the deadlines set by the trial court's order on the assumption that they conflict with those that might otherwise be prescribed by the arbitration agreement, as that agreement might turn out to be constituted.
 Conclusion
We affirm the judgment in the Wright case (case no. 1022043). We deny the petition for the writ of mandamus relating to theWright case (case no. 1022060). We grant the petition for the writ of mandamus in the Coleman case (case no. 1030069); because we thereby direct the trial judge to vacate his order in that case, the appeal in the Coleman case (case no. 1030066) is due to be dismissed.
1022043 — AFFIRMED.
NABERS, C.J., and HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, and STUART, JJ., concur.
WOODALL, J., concurs in the judgment.
1022060 — PETITION DENIED.
NABERS, C.J., and HOUSTON, LYONS, BROWN, JOHNSTONE, and STUART, JJ., concur.
SEE, J., concurs specially.
WOODALL, J., concurs in the judgment.
1030066 — APPEAL DISMISSED.
NABERS, C.J., and HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, WOODALL, and STUART, JJ., concur.
1030069 — PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, WOODALL, and STUART, JJ., concur.
[1] The number of plaintiffs in the various cases is stated differently by the parties at different points in their trial court filings and their submissions to this Court. We use the figures most frequently referenced; the exact numbers are not significant to the issues involved in these appellate proceedings.
[2] A third alleged agent was named as a defendant, but he was subsequently dismissed by the plaintiffs before he filed an appearance.
[3] This Court reversed the judgment of the Court of Civil Appeals in Ex parte First Alabama Bank, 883 So.2d 1236 (Ala. 2003).